**Harold G. DIEHL, Jr., Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 2, 2010.
Decided Sept. 20, 2010.

Regina Hertzig, Philadelphia, for petitioner.

Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

Irwin W. Aronson, Harrisburg, for amicus curiae, Pennsylvania AFL–CIO.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

In this appeal,[1] Harold G. Diehl, Jr. (Claimant) asks whether the Unemployment Compensation Board of Review (Board) erred in denying him unemployment benefits. The Board denied Claimant benefits on the ground that he voluntarily quit his employment to accept an early retirement incentive and continuing work was available to Claimant.

Claimant primarily argues the Board's decision ignored the clear and unambiguous language of the "voluntary layoff option" proviso (VLO proviso) contained in Section 402(b) of the Unemployment Compensation Law[2] (Law) ("no otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position pursuant to a labor-management contract agreement...."). He also asks that this Court overrule our *en banc* decision in *Renda v. Unemployment Compensation Board of Review*, 837 A.2d 685 (Pa.Cmwlth.2003), *appeal denied*, 581 Pa. 685, 863 A.2d 1151 (2004), which, according to Claimant, holds the VLO proviso does not apply where a claimant accepts a financial incentive for a voluntary layoff. Alternatively, he asserts *Renda* is factually distinguishable. Claimant further maintains the Board capriciously disregarded evidence that he had

good cause to voluntarily leave his employment. Discerning no error in the Board's decision, we affirm.

## I. Factual and Procedural History

The Board found the following facts. Claimant worked for ESAB Welding and Cutting Products (Employer) as a shipping clerk for over 15 years at a final rate of pay of $20.06 per hour. Claimant's last day of employment was February 9, 2009.

Employer offered certain employees an early retirement package as an incentive to reduce its workforce and, therefore, minimize company-wide layoffs. The early retirement package provided payment for unused vacation days and paid health insurance for five years after retirement.

Claimant was a high-seniority employee. Claimant was in no danger of being laid off by Employer because continuing work would have been available to him as a high-seniority employee. Claimant voluntarily quit his position to help the company and because of the incentives in Employer's early retirement package.

Claimant subsequently applied for unemployment benefits, which were initially denied. Claimant appealed. A referee conducted a hearing at which Claimant and the union's recording secretary testified. Although Claimant was unrepresented at the hearing, the president of Claimant's union assisted Claimant and also testified as a witness. In addition, Claimant presented two documents: (1) a

---

1. Before this Court are four other related, but unconsolidated cases: *Lawrence v. Unemployment Comp. Bd. of Review*, (Dkt. No. 2313 C.D.2009, filed September 20, 2010); *Bixler v. Unemployment Comp. Bd. of Review*, (Dkt. No. 2314 C.D.2009, filed September 20, 2010); *Donnelly v. Unemployment Comp. Bd. of Review*, (Dkt. No. 2496 C.D.2009, filed September 20, 2010); and, *Dehoff v. Unemployment Comp. Bd. of Review*, (Dkt. No. 275 C.D.2010, filed September 20, 2010). This Court issued

orders permitting the Petitioners in those cases to proceed *seriatim* with this appeal.

The petitioners in all five cases are joined by the Pennsylvania AFL–CIO as *amicus curiae*.

2. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as *amended*, 43 P.S. § 802(b).

memorandum from Employer to Claimant's union listing 20 employees who Employer would layoff; and, (2) a letter from Employer's Human Resource Manager, which stated, "[t]he retirement packages offered to all hourly employees this year have been part of an overall reduction of force. The reductions of force have been necessary in response to deteriorating business conditions." Certified Record, Ex. C–2. Neither document specifically referenced or identified Claimant. Employer did not appear at the hearing. Ultimately, the referee affirmed the initial denial of benefits. Claimant, represented by counsel for the first time, appealed to the Board.

Initially, the Board issued a decision denying benefits under Section 402(b) of the Law. Claimant filed a request for reconsideration, asserting the Board did not address the applicability of Section 402(b)'s VLO proviso. The Board subsequently issued an order vacating its initial decision. About a month later, the Board issued a new decision again denying benefits. In so doing, the Board expressly considered, but declined to apply, the VLO proviso based on this Court's decision in *Renda.* Claimant's appeal to this Court followed.

## II.  Issues

■ On appeal,[3] Claimant essentially presents four issues. First, he asserts the Board erred in denying benefits under Section 402(b) of the Law where he exercised an option of accepting a layoff from

an available position pursuant to an agreement between Employer and his labor union. Next, Claimant contends the Board capriciously disregarded evidence that he had necessitous and compelling cause for leaving his employment. Additionally, Claimant contends that, prior to leaving his employment, he received assurances from the local UC service center that he would qualify for benefits. Finally, Claimant argues that awarding benefits in this situation would be "revenue neutral" for the unemployment compensation fund because, had he not accepted a layoff, Employer would have laid off another employee who would be receiving the benefits Claimant now seeks.

## III.  Discussion

### A.  Application of VLO Proviso/*Renda*

■ Claimant's central argument is that the Board's decision blatantly ignores the clear and unambiguous language of Section 402(b)'s VLO proviso. Claimant also notes that, like the VLO proviso, Section 401(d) of the Law, 43 P.S. § 801, affirmatively provides that employees who voluntarily accept a layoff pursuant to a labor-management contract are entitled to unemployment benefits.

Claimant contends that, in declining to apply the VLO proviso, the Board here relied on our decision in *Renda.* He asserts *Renda* stands for the proposition that the VLO proviso does not apply where

---

**3.** "Our review is limited to determining whether the findings of fact are supported by substantial evidence and whether there was a violation of the constitution or agency procedure of law." *Caterpillar, Inc. v. Unemployment Comp. Bd. of Review,* 550 Pa. 115, 123, 703 A.2d 452, 456 n. 5 (1997).

As fact finder, the Board determines the weight assigned to the evidence. *Tapco, Inc. v. Unemployment Comp. Bd. of Review,* 168 Pa.Cmwlth. 292, 650 A.2d 1106 (1994).

Credibility determinations are exclusively within the Board's province. *Melomed v. Unemployment Comp. Bd. of Review,* 972 A.2d 593 (Pa.Cmwlth.2009).

Unchallenged findings are conclusive on appeal. *Campbell v. Unemployment Comp. Bd. of Review,* 694 A.2d 1167 (Pa.Cmwlth. 1997). In addition, the Board's findings are conclusive on review if supported by substantial evidence in the record, taken as a whole. *Tapco.*

a claimant accepts a financial incentive for a voluntary layoff. Claimant maintains we should overrule *Renda* because it conflicts with clear statutory language of the VLO proviso, which does not prohibit claimants from accepting financial incentives in exchange for voluntary layoffs. Claimant argues the proviso states only that a claimant, who accepts a voluntary layoff from an available position due to a labor management contract agreement, is eligible for benefits.[4]

Alternatively, Claimant contends *Renda* is factually distinguishable because the claimants in that case received cash payouts for accepting voluntary layoffs, while Claimant here accepted only medical benefits and no cash payout.

The VLO proviso, which the legislature added in 1980, is contained within Section 402(b) of the Law. It states:

An employe shall be ineligible for compensation for any week—

\* \* \*

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.... *Provided further, That no otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position pursuant to a labor-management contract agreement, or pursuant to an established employer plan, program or policy* ....

43 P.S. § 802(b) (emphasis added); *see W.R. Grace & Co. v. Unemployment Comp. Bd. of Review*, 71 Pa.Cmwlth. 86, 455 A.2d 729 (1983) (applying VLO proviso).

In *W.R. Grace*, this Court upheld the unemployment compensation authorities'

award of benefits to a claimant under the VLO proviso. There, the claimant worked for the employer as a "packer/stacker." *Id.* at 729. Because of an economic downturn, and because the claimant did not have sufficient seniority, the employer bumped the claimant from her first shift duties, offering her similar employment for the second and third shifts, or the option of taking a voluntary layoff with recall rights under an oral agreement between the employer and its employees. The claimant chose the voluntary layoff option. Analyzing and applying the VLO proviso, this Court explained:

The terms of Section 402(b) are unambiguous. They provide that what might otherwise be a basis for ineligibility, leaving work without necessitous and compelling cause, is irrelevant so long as:

(1) the employee is "otherwise eligible" for unemployment compensation benefits; and

(2) his unemployment is due to exercising a voluntary layoff option either negotiated by contract or established unilaterally by the employer.

Here, there was substantial evidence to support the referee's finding that [the employer] afforded [the claimant] the option of taking a voluntary layoff with recall rights from her packer/stacker position under an established, albeit oral, employer plan. Thus, so long as [the claimant] was "otherwise eligible," we need not consider her personal reasons for declining the second and third shift options, which otherwise might or might not have been a basis for finding that she voluntarily quit.

*Id.* at 730. Because the record revealed the claimant was, in fact, "otherwise eligi-

---

**4.** *Amicus curiae* Pennsylvania AFL–CIO   echoes these arguments.

ble," we upheld the award of benefits. *Id.* at 730–31.

Thereafter, in *Flannery v. Unemployment Compensation Board of Review*, 125 Pa.Cmwlth. 64, 557 A.2d 52 (1989), we declined to apply the VLO proviso where a claimant voluntarily elected to avail herself of an advanced retirement package. Finding that continuing work was available to the claimant if she did not opt for the early retirement package, the Board denied benefits. On appeal, the claimant asserted the Board erred in declining to apply the VLO proviso. Rejecting that argument, we explained:

> [The] [c]laimant contends that the [e]mployer plan was in essence a layoff plan thus placing his claim within the purview of the [VLO] proviso. Although [the] [c]laimant makes a valiant effort to transform the [e]mployer's plan into a voluntary layoff plan, the record defies this transposition. [The] [e]mployer testified that this plan was introduced to reduce overhead costs but was purely a voluntary program for those people who wanted to retire. [The] [e]mployer testified further that if [the] [c]laimant did not choose to exercise this option, things would proceed without any changes; and that [the] [c]laimant was not facing an imminent layoff or salary cut. . . . It is clear from the [e]mployer's testimony that the Board's finding that [the] [c]laimant voluntarily terminated his employment in order to avail himself of an advanced retirement package is supported by the evidence and thus shall not be overturned by this Court. *See* [*Sievers v. Unemployment Comp. Bd. of Review*, 124 Pa.Cmwlth. 52, 555 A.2d 260 (1987), *aff'd per curiam*, 520 Pa. 83, 551 A.2d 1057 (1989) ].

> [The] [c]laimant cites [*W.R. Grace* ] for the two-prong test necessary to qualify for unemployment benefits under the voluntary layoff option proviso. Since [the] [c]laimant failed to meet the second prong of the test, i.e., exercise of a voluntary layoff option pursuant to contract or established employer plan, the Board committed no error in failing to find [the] [c]laimant eligible under this proviso.

*Id.* at 53–54; *see also George v. Unemployment Comp. Bd. of Review*, 767 A.2d 1124, 1128 n. 10 (Pa.Cmwlth.2001) ("Although cited by [the] [c]laimant, we note that the proviso in Section 402(b) regarding acceptance of voluntary layoff does not apply to situations involving acceptance of severance or retirement incentives.")

Consistent with *Flannery* and *George*, in *Renda*, this Court again declined to apply the VLO proviso where claimants accepted early retirement incentive packages. *Renda* involved consolidated appeals by 63 claimants who were former Verizon employees. The employees, who had an average level of employment in excess of 30 years, were union employees whose employment was governed by collective bargaining agreements that required Verizon to offer early retirement packages to employees prior to layoffs. Verizon offered enhanced income security plans (EISPs) to certain employees, which consisted of a payout of $2,200 for each year of completed service up to a maximum of $66,000, an expense allowance of up to $3,750, and a five-percent increase in pension benefits. After accepting the EISPs, the claimants sought unemployment benefits; the unemployment compensation authorities denied benefits. On appeal, we affirmed. We first determined the record supported the fact-finder's determinations that the claimants did not prove necessitous and compelling cause to voluntarily quit because, based on seniority, the claimants faced no imminent threat of termination and, therefore, their fears over job security were

speculative. In addition, the record revealed Verizon made continuing work available. We also rejected the claimants' assertions that they were entitled to benefits under the VLO proviso, stating:

> [The] [c]laimants request this Court overrule [*Sievers* ], in which we did not apply the VLO proviso to a claimant who accepted an early retirement incentive package. . . .
>
> As in *Sievers,* the VLO proviso is inapplicable here. The referees specifically found [the] [c]laimants voluntarily terminated their employment to receive the EISP. Claimants did not exercise the option of a voluntary layoff because, as found by the referees, continuing work was available to all [the] [c]laimants. Because [the] [c]laimants failed to establish they exercised a voluntary layoff option pursuant to contract or established employer plan, we discern no error from the referees' failure to find [the] [c]laimants eligible under the VLO proviso. *See* [*George*]; *Flannery* . . . . Therefore, we decline to overrule *Sievers.*

*Renda,* 837 A.2d at 694.

About a year later, we reached the same result in *Johnson v. Unemployment Compensation Board of Review,* 869 A.2d 1095 (Pa.Cmwlth.2005), *appeal denied sub nom., Huntzinger v. Unemployment Compensation Board of Review,* 585 Pa. 699, 889 A.2d 90 (2005), where another group of former Verizon employees accepted voluntary termination offers in exchange for financial incentives and then sought unemployment benefits. One of the claimants, who accepted Verizon's offer of an EISP, asserted entitlement to benefits based on the VLO proviso. We rejected this argument, explaining:

> [The claimant] acknowledges this Court's long history of concluding the VLO proviso does not apply where the claimant accepts an early retirement incentive package. *See, e.g., George*; *Flannery*; [*Sievers*]. However, [the claimant] argues those cases were wrongly decided.
>
> We recently revisited this issue in *Renda,* where we declined to overturn our decisions holding the VLO proviso does not apply where a claimant accepts an early retirement incentive package. *Renda,* 837 A.2d at 693–94. We decline [the claimant's] invitation to revisit the issue again. We conclude the VLO proviso does not apply to [the claimant] as the Board found she left her job to accept a voluntary early retirement package. *Renda.*

*Johnson,* 869 A.2d at 1120.

As in *Johnson,* based on our history of concluding the VLO proviso does not apply where a claimant accepts an early retirement incentive package, we decline Claimant's invitation to again revisit this issue here.

Further, we expressly reject Claimant's argument that *Renda* conflicts with the plain language of the VLO proviso on the ground that the proviso does not prevent a claimant from receiving a financial incentive.

First, as is evident from our discussion of the line of cases interpreting the VLO proviso, this Court repeatedly holds the VLO proviso does not apply where a claimant accepts an early retirement incentive package. Claimant does not meaningfully address this Court's long line of authority.

Second, Claimant's interpretation of the VLO proviso is at odds with the proviso's plain language, which states (with emphasis added), "no otherwise eligible claimant shall be denied benefits for any week in which his unemployment *is due to exercising the option of accepting a layoff* . . . ." 43 P.S. § 802(b). Here, as in *Sievers,*

*Flannery, George, Renda* and *Johnson,* Claimant did not exercise an option to accept a voluntary layoff; rather, the Board found he accepted early retirement incentives and severance.

Third, we reject Claimant's reliance on a dissenting opinion to the Supreme Court's *per curiam* affirmance of this Court's decision in *Sievers* (Papadakos, J. dissenting). Clearly, this dissenting opinion is not binding.

Fourth, we do not believe Claimant's quotation of the "Declaration of public policy" set forth in Section 3 of the Law, supports Claimant's position here. That Section states (with emphasis added):

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. *Involuntary unemployment* and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods *when they become unemployed through no fault of their own.* The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. *The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citi-*

> *zens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.*

43 P.S. § 752. Here, Claimant's unemployment did not arise through "no fault of [his] own;" rather, Claimant voluntarily chose to retire in exchange for certain incentives, despite the fact that continuing work was available. Thus, recitation of the Law's purpose does not advance his position here.

Finally, we reject Claimant's assertions that he is entitled to benefits under the VLO proviso on the ground that *Renda* is distinguishable because, unlike the claimants in that case, he did not receive a cash payout here.

The Board found "[t]he early retirement package provided for payment of unused vacation days and paid health insurance for 5 years [5] following retirement." Bd. Op., 11/10/09, Finding of Fact (F.F.) No. 3. At hearing, Claimant acknowledged that, had he retired without the early retirement package, he would not have received the health insurance benefit. Referee's Hearing of 6/16/09, Notes of Testimony (N.T.), at 5. Claimant further testified Employer paid employees who opted for the early retirement package for unused vacation. *Id.* In addition, Claimant testified that his final day of work was February 9, 2009, but Employer paid him until March 31, 2009, an additional seven weeks. *Id.* at 4. Because Claimant received tangible financial incentives in exchange for his early retirement, we decline to distinguish

---

5. In its brief, the Board indicates it "concedes Claimant's assertion at page 14 n. 1 of his brief that only the first three years of health insurance was 100 percent paid by Employer, while the latter two years was 50 percent paid. This sliding scale did not change the fact that Claimant received a financial incentive for retiring early." Respondent's Br. at 10 n. 5.

*Renda* on the ground the claimants there received a greater cash payout.

## B. Capricious Disregard

■ Claimant next argues the Board capriciously disregarded undisputed evidence that he left work for a necessitous and compelling reason. Specifically, he argues it is uncontested that Employer announced its intention to layoff 20 employees with the possibility of additional layoffs, but that jobs could be saved if some employees accepted the voluntary layoff pursuant to an agreement with the union. Claimant argues he accepted this offer as a favor to Employer and as a way to save the jobs of younger employees. He asserts this Court granted unemployment benefits in factually similar cases. *See Phila. Parking Auth. v. Unemployment Comp. Bd. of Review*, 654 A.2d 280 (Pa.Cmwlth.1995); *Eby v. Unemployment Comp. Bd. of Review*, 157 Pa.Cmwlth. 10, 629 A.2d 176 (1993).

■ The "capricious disregard standard of review," previously applicable where only the party with the burden of proof presented evidence and did not prevail before the administrative agency, is now "an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Johnson*, 869 A.2d at 1103 n. 2 (quoting *Leon E. Wintermyer, Inc., v. Workers' Comp. Appeal Bd. (Marlowe)*, 571 Pa. 189, 203, 812 A.2d 478, 487 (2002)). Capricious disregard is a deliberate disregard of competent evidence that one of ordinary intelligence could not possibly avoid in reaching the result. *Remaley v. Workers' Comp. Appeal Bd. (Turner Dairy Farms, Inc.)*, 861 A.2d 405 (Pa.Cmwlth.2004). This standard will generally assume a more visible role on consideration of negative findings and conclusions. *Johnson*. Nevertheless, it is not to be applied in such a manner as would intrude upon the agency's fact-finding role and discretionary decision-making authority. *Id.*

■ Further, "where there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Wintermyer*, 571 Pa. at 204, 812 A.2d at 488 n. 14.

■ Necessitous and compelling cause "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *McCarthy v. Unemployment Comp. Bd. of Review*, 829 A.2d 1266, 1270 (Pa.Cmwlth.2003) (citations and quotations omitted). An employee voluntarily terminating employment has the burden of proving his termination was necessitous and compelling. *Mansberger v. Unemployment Comp. Bd. of Review*, 785 A.2d 126 (Pa.Cmwlth.2001). Whether an employee has necessitous and compelling reason to terminate his employment is a question of law reviewable by this Court. *Id.*

In *Renda*, we stated:

In the context of corporate downsizing, the *critical inquiry* is whether the factfinder determined the circumstances surrounding a claimant's voluntary quit indicated a likelihood that fears about the employee's employment would materialize, that serious impending threats to her job would be realized, and that her belief her job is imminently threatened is well-founded.

*Id.* at 692 (footnote omitted) (emphasis added). We also summarized: "[S]peculation pertaining to an employer's financial condition and future layoffs, however disconcerting, does not establish the requisite necessitous and compelling cause...."

*Id.* (quoting *Staub v. Unemployment Comp. Bd. of Review,* 673 A.2d 434, 437 (Pa.Cmwlth.1996) (citation omitted)).

In *Renda,* the claimants testified they accepted early retirement packages based on fears over job security due to increased reliance on technology, lack of new hires, reductions in overtime, reductions in number of employees and transfer of work duties. We determined these factors were insufficient to satisfy the claimants' burdens, particularly where Verizon did not inform any of the claimants that they would be laid off, and continuing work was available.

Here, the Board found, "[t]he claimant was in no danger of being laid off by the employer because continuing work would have been available to him as a high seniority employee." F.F. No. 5. In addition, the Board found, "[t]he claimant voluntarily quit to help the company and because of the incentives in the employer's early retirement package." F.F. No. 6. These findings are directly supported by Claimant's testimony.

More specifically, at hearing, the following exchange occurred:

R  Okay. Now did they tell you what would happen if you did not accept the early retirement package?

C  *Somebody else would be laid off.*

R  But not you?

C  *No. I wouldn't have had to be laid off* but they said it'd be to their benefit to retain somebody that had less insurance and less salary and benefits than I did.

\*     \*     \*

R  Okay. And I just want to clarify with you, Mr. Diehl. *Your name isn't on this list [of the 20 employees who would be laid off], right?*

C  *No, not yet. No. No, it wouldn't be. No.*

R  *Because you wouldn't have been affected?*

C  Not—*no.* Because that's from the bottom of the list.

R  *That's the bottom of the list. And you're higher up?*

C  *Yes.*

N.T. at 5–7 (emphasis added).

Claimant offered no specific, direct evidence of communications or actions by Employer that his job was imminently threatened. Where, as here, an employer did not specifically inform a claimant he would be laid off, and continuing work was available, no error is evident in the conclusion that the claimant did not prove his voluntary termination was compelled. *See Renda.* In short, because the Board's findings are supported and because those findings support the Board's determination that there were no necessitous or compelling reasons forcing Claimant to retire early, *see* Bd. Op. at 2, no capricious disregard of evidence is apparent.[6]

Moreover, this is not a case like *Philadelphia Parking Authority* or *Eby,* relied on by Claimant. In those cases, unemployment benefits were awarded where the record revealed the employers informed the claimants that they were within a group that could be laid off if they did not accept early retirement packages, and

---

6. Claimant further asserts that even if this Court determines he did not meet his burden of proving necessitous and compelling cause, it is undisputed that his evidence showed he exercised the option of accepting a layoff from an available position pursuant to a labor-management contract agreement and, therefore, he is eligible for benefits under the VLO proviso. As explained above, however, the VLO proviso is inapplicable here because Claimant accepted an early retirement incentive package. Therefore, we reject this argument.

there was no competent evidence that continuing work was available to the claimants if they did not accept the early retirement offers.

Unlike *Philadelphia Parking Authority* and *Eby,* here Employer did not inform Claimant he was on a list of employees who could be laid off. To the contrary, the list of employees that Employer intended to layoff, which Claimant presented at the referee's hearing, did *not* include Claimant. *See* Referee's Hearing, 6/16/09, at Ex. C–1; N.T. 6–7. In addition, the Board's finding that continuing work was available to Claimant here is easily inferred from Claimant's testimony that Employer would not have laid him off if he did not accept the early retirement incentives. N.T. at 5–7. Thus, *Philadelphia Parking Authority* and *Eby* are distinguishable.

### C. Estoppel

■ Claimant also argues the Board erred in ignoring undisputed testimony that both he and his union representative contacted the local UC office to confirm he would qualify for benefits, and they received assurances he would. Claimant's undeveloped argument on this point consists of two sentences and contains no citation to authority. This argument fails.

■ First, Claimant did not raise this issue in his petition for review to this Court; therefore, it is waived. *See Jimoh v. Unemployment Comp. Bd. of Review,* 902 A.2d 608 (Pa.Cmwlth.2006) (issues not contained in petition for review or fairly comprised therein are deemed waived). Similarly, Claimant's failure to develop this issue in his brief results in waiver. *See Rapid Pallet v. Unemployment Comp. Bd. of Review,* 707 A.2d 636 (Pa.Cmwlth.1998) (failure to develop issue in appellate brief results in waiver).

Also, this argument fails on its merits. While Claimant does not set forth any

theory that could provide a basis for relief, the Board points out that equitable estoppel cannot apply to acts of governmental agents that are outside the scope of their authority or in violation of law. *See Finnegan v. Pub. Sch. Employees' Ret. Bd.,* 126 Pa.Cmwlth. 584, 560 A.2d 848, 850 (1989), *aff'd per curiam,* 527 Pa. 362, 591 A.2d 1053 (1991) ("[T]he government cannot be subject to the acts of its agents and employees if those acts are outside the agent's powers, in violation of positive law, or acts that require legislative or executive action.") "To decide otherwise would be tantamount to giving employee errors the effect of amending the substance of a statute." *Id.* at 851. The Board also reminds us that where the Law does not warrant a ruling in Claimant's favor, we lack equitable power to ignore the Law. *See Sturni v. Unemployment Comp. Bd. of Review,* 155 Pa.Cmwlth. 501, 625 A.2d 727 (1993). We agree with the Board. As discussed above, the Law does not entitle Claimant to unemployment benefits based on the facts presented here; any representation by a UC service center employee to the contrary could not bind the Board to a different result.

Further, at hearing here, neither Claimant nor his union representative was able to identify the service center employee who purportedly rendered the opinion that Claimant was eligible for unemployment benefits. Because "the burden rests on the party asserting ... estoppel to establish such estoppel *by clear, precise and unequivocal evidence[,]* " we discern no error in the Board's implicit rejection of Claimant's vague assertion on this point. *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 436, 457 A.2d 502, 504 (1983) (emphasis added) (citation and quotation omitted).

### D. Impact on UC Fund

■ As a final point, Claimant asks this Court to consider the fact that grant-

ing him unemployment benefits would be revenue neutral to the unemployment compensation fund. Specifically, he asserts that had he not accepted the voluntary layoff here, Employer would have laid off another employee, and that employee would receive the same benefits that Claimant now seeks.

As with the issue addressed directly above, Claimant neither develops argument on this issue nor cites supporting authority, and, he did not raise this issue in his petition for review. Therefore, the issue is waived. *Jimoh*; *Rapid Pallet*. Further, as explained above, this Court lacks authority to ignore the Law based on any alleged equitable power. *Sturni*.

Based on the foregoing, we affirm.

### *ORDER*

**AND NOW,** this 20th day of September, 2010, the order of the Unemployment Compensation Board of Review is **AFFIRMED.**