IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Evylene Farag,                            :
                    Petitioner            :
                                          :
         v.                               : No. 1902 C.D. 2013
                                          : Submitted: April 25, 2014
Unemployment Compensation                 :
Board of Review,                          :
                    Respondent            :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE MARY HANNAH LEAVITT, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                    FILED: August 28, 2014


         Evylene Farag (Claimant) petitions for review of an adjudication of
the Unemployment Compensation Board of Review (Board) denying her claim for
unemployment compensation benefits.    In doing so, the Board affirmed the
decision of the Referee that Claimant was ineligible for benefits under Section
402(e) of the Unemployment Compensation Law[1] (Law) by reason of her willful
misconduct during a disagreement with her supervisor.  We affirm.

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  It
provides, in relevant part, as follows:

> An employe shall be ineligible for compensation for any week … [i]n which his
> unemployment is due to his discharge or temporary suspension from work for
> willful misconduct connected with his work.

43 P.S. §802(e).

Claimant was employed as a teaching assistant by YMCA of York and York County (Employer) from May 2, 2001, to March 1, 2013, when Employer notified her by letter that she was being discharged for willful misconduct. The letter cited an incident which occurred on February 28, 2013, where Claimant became agitated and disrespectful to her supervisors. The letter stated that this action was a violation of Employer's Code of Conduct, which requires employees to "maintain[ ] an attitude of respect, loyalty, patience, courtesy, tact and maturity." Certified Record (C.R. ___), Item No. 2, Attachment to Claimant Questionnaire. Claimant applied for unemployment benefits, which were granted by the Altoona UC Service Center. Employer appealed and a hearing was held before a Referee.

At the hearing, Employer presented the testimony of Claimant's direct supervisor, Dee Searle, and Employer's Childcare Director, Christina Siddique. Searle testified that on February 28, 2013, Claimant asked Searle if she could take over the shift of another employee, Layken Crone, who had recently tendered her resignation. This conversation occurred in a classroom where Crone and 12 or 13 children between the ages of three and four were present. Searle explained to Claimant that, due to budget constraints, Employer was not going to fill Crone's position. According to Searle, Claimant responded by putting "her hands up and said, but I have seniority." Notes of Testimony, June 3, 2013, at 6 (N.T. ___). Searle testified that Claimant's voice was loud enough for the children to hear. Searle offered Claimant another shift, which Claimant declined.

Searle testified that once Claimant had calmed down, Searle left the room. Claimant followed Searle and requested a meeting in Siddique's office to continue discussing Claimant's shift request. According to Searle, Claimant's

2

demeanor during this meeting was "irritated," "angry," and "crying." N.T. 7. Searle requested assistance from Siddique and Craig Wolfe, Employer's executive director, who were unable to calm Claimant. Eventually, Claimant became so upset that she suffered an anxiety attack and was taken by ambulance to the hospital.

Siddique testified that when Searle called her for assistance, Searle explained that Claimant "was very, very upset and [Searle] didn't know what exactly to do with her because she was uncontrollably sobbing, upset, [and] loud[.]" N.T. 15. When Siddique arrived at her office, she attempted to talk to Claimant but Claimant was "very insubordinate." *Id*. Siddique further described Claimant's demeanor as "volatile." N.T. 16. Siddique testified that, because her office was so close to various classrooms, "[t]he teachers were hearing because I had to come out a couple of times. They were wondering what was going on, why is there yelling in the office." *Id*. According to Siddique, before Claimant was taken to the hospital, Claimant "got very aggressive and she threw her cell phone." N.T. 17. Both Searle and Siddique agreed that Claimant never used offensive, vulgar, or threatening language.

Crone testified on Claimant's behalf. Although Crone was in the classroom where Claimant initially discussed a shift change with Searle, Crone did not hear the conversation. Crone testified that she would have heard Claimant speaking to Searle if Claimant had been speaking loudly. Crone acknowledged that she was not present in Siddique's office during the meeting with Claimant, but since the office door was left open, Crone posited that she would have heard any raised voices. Crone explained that she and another teacher "had taken our kids on

a walk downtown and we had even passed by the office twice and I did not hear a commotion either time I passed by." N.T. 23.

Claimant testified that she was upset and cried during the meeting in Siddique's office. Claimant denied throwing her cell phone or becoming angry during the meeting. According to Claimant, any insubordinate behavior Siddique or Searle believed they witnessed was the result of her anxiety attack, not a purposeful disregard of Employer's standards of conduct. Moreover, Claimant testified that she requested the meeting in Siddique's office because she believed it was a more appropriate location to discuss her concerns.

The Referee found that Employer "gave credible testimony that when [Searle] spoke to [Claimant] in her classroom [Claimant] became extremely loud and confrontational." Referee's Decision and Order at 2. The Referee explained that

> [c]ertainly in a childcare setting, given the ages of the children that [Claimant] was supervising, maintaining a professional attitude was extremely important. Not only was [Claimant] unprofessional in her conduct in the classroom over a matter that could have been discussed privately with [Searle] on another occasion, [Claimant] later went to the office where she engaged in a full-blown confrontation with [Searle] leading [Claimant] eventually into hysterics.

*Id*. Accordingly, the Referee reversed the UC Service Center's decision and denied Claimant unemployment benefits. The Board affirmed the Referee's decision and explained that Claimant's "boisterous attitude, especially in front of children, is a disregard of the standards of behavior that the employer has a right to expect of an employee." Board Adjudication at 2. Claimant now petitions this Court for review.

4

On appeal,[2] Claimant raises two issues. First, Claimant contends that the Board made three unfounded factual findings: (1) that Claimant "proclaimed" she had seniority to Searle; (2) that Claimant was "loud and visibly upset"; and (3) that Claimant was "boisterous." Second, Claimant argues that the Board capriciously disregarded Crone's testimony in reaching its decision. Claimant contends that once the exaggerations in the Board's opinion are corrected and Crone's testimony is properly considered, the facts do not support the conclusion of willful misconduct.

Whether an employee's actions constitute willful misconduct is a question of law subject to this Court's review. *Cundiff v. Unemployment Compensation Board of Review*, 489 A.2d 948, 950 (Pa. Cmwlth. 1985). The employer bears the burden of proving that the employee engaged in willful misconduct. *Id.* Though willful misconduct is not defined in the law, this Court has defined it as:

> (1) the wanton and willful disregard of the employer's interests; (2) the deliberate violation of rules; (3) the disregard of standards of behavior that an employer can rightfully expect from his employee; or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

*Ellis*, 59 A.3d at 1162. An employee commits willful misconduct if she violates a standard of conduct that is obvious to the employee and the "employee's conduct is so inimical to the employer's interests that discharge is a natural result." *Id.*

---

[2] Our scope of review is limited to determining whether the findings are supported by substantial evidence, an error of law was committed, or a constitutional right was violated. *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1162 n.2 (Pa. Cmwlth. 2013).

In her first issue, Claimant cites three findings by the Board that Claimant contends are not supported by substantial evidence. First, Claimant argues that the Board wrongly found that Claimant "*proclaimed*, 'I have seniority.'" Board Adjudication, Finding of Fact No. 4 (F.F. ___) (emphasis added). According to Claimant, there is no evidence in the Record to support the Board's use of the word "proclaimed;" Claimant merely "stated" that she had seniority. Second, Claimant contends that the Board's sixth finding of fact,[3] that Claimant was "loud," is directly contradicted by Crone's testimony. Third, Claimant contends the Board improperly labeled Claimant's behavior as "boisterous" in the discussion section of its adjudication.[4]

When reviewed by this Court, the Board's findings of fact are conclusive, so long as they are supported by substantial evidence. *Tapco, Inc. v. Unemployment Compensation Board of Review*, 650 A.2d 1106, 1108 (Pa. Cmwlth. 1994). Substantial evidence is "such relevant evidence which a reasonable mind might accept as adequate to support a conclusion." *Philadelphia Gas Works v. Unemployment Compensation Board of Review*, 654 A.2d 153, 157 (Pa. Cmwlth. 1995). On review, the prevailing party is given the benefit of all reasonable inferences that can be drawn in its favor from the testimony provided to the referee when determining whether substantial evidence supports the Board's

---

[3] Claimant erroneously refers to the Board's fifth finding of fact. It is clear from her argument that she challenges the Board's sixth finding of fact.

[4] Generally, this Court prefers not to treat the discussion section of the Board's opinion as factual findings. *BK Foods, Inc. v. Unemployment Compensation* Board, 547 A.2d 873, 875 n.2 (Pa. Cmwlth. 1988). However, as it does not affect the disposition, we will consider Claimant's argument as it is presented to us.

conclusions. *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 831 (Pa. 1977).

In the case at bar, the Board credited the testimony of Searle and Siddique. These witnesses testified that Claimant's behavior ranged from "loud" to "volatile;" that Claimant was "very aggressive" and threw her cell phone; and Claimant's behavior in Siddique's office was disruptive enough to draw the attention of the teachers. Thus, the Board did not err in using the words "proclaimed," "loud," and "boisterous" because there was a basis in the record for using them. Claimant's challenge to the Board's language is a semantic one, and it does not alter the fact that her disruptive behavior violated the standard of conduct that Employer had a right to expect from its employees.[5]

Claimant next argues that the Board capriciously disregarded Crone's testimony, which Claimant contends refuted the testimony of Searle and Siddique. Claimant's argument is unavailing.

"Capricious disregard is a deliberate disregard of competent evidence that one of ordinary intelligence could not possibly avoid in reaching the result." *Diehl v. Unemployment Compensation Board of Review*, 4 A.3d 816, 824 (Pa. Cmwlth. 2010). The doctrine of capricious disregard is not meant to give this

---

[5] The dissent contends that the findings of the Board that Claimant was "loud" and "visibly upset" do not establish willful misconduct. A single instance of raising one's voice may not constitute willful misconduct. It is a question of degree. The Board, which described Claimant's "loudness" as "boisterous" in its discussion section, found the degree of loudness to be such that it constituted willful misconduct. "Boisterous" is defined as "noisily turbulent," "loudmouthed and rough in behavior," "completely unrestrained," and "marked by tumultuous violence and fury." Webster's Third New International Dictionary 248 (2002). By characterizing Claimant's behavior as boisterous, the Board determined Claimant's "loudness" to be intolerable, *i.e.*, willful misconduct. Employees may commit willful misconduct without being abusive, vulgar or offensive. *See Ellis*, 59 A.3d 1159.

7

Court the power to intrude on the Board's role as fact-finder. *Id.* "It should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Id.* (quoting *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 n.14 (Pa. 2002)).

Here, the Board did not capriciously disregard Crone's testimony; it chose to credit the testimony of Searle and Siddique over Crone's testimony. It is well settled that witness credibility determinations are solely within the discretion of the Board. *Astarb v. Unemployment Compensation Board of Review*, 413 A.2d 761, 763 (Pa. Cmwlth. 1980). Essentially Claimant asks the Court to ignore this well-settled standard of appellate review and adopt her preferred version of the facts. This we cannot do.

In summary, the Board did not capriciously disregard evidence and its adjudication is supported by substantial evidence. Accordingly, we affirm the Board's adjudication.

_____
MARY HANNAH LEAVITT, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Evylene Farag,                             :
               Petitioner         :
                                :
            v.                            :   No. 1902 C.D. 2013
                                :
Unemployment Compensation                  :
Board of Review,                           :
               Respondent         :

# **O R D E R**

AND NOW, this 28th day of August, 2014, the order of the Unemployment Compensation Board of Review, dated, August 27, 2013, in the above-captioned matter is hereby AFFIRMED.

                                  _____

                                  MARY HANNAH LEAVITT, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Evylene Farag, :
: No. 1902 C.D. 2013
Petitioner : Submitted: April 25, 2014
:
v. :
:
Unemployment Compensation :
Board of Review, :
:
Respondent :


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
         HONORABLE MARY HANNAH LEAVITT, Judge
         HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY SENIOR JUDGE FRIEDMAN                    FILED:  August 28, 2014


        I respectfully dissent.  Because the findings made by the Unemployment Compensation Board of  Review (UCBR) do not support its conclusion that Evylene Farag (Claimant) engaged in willful misconduct, I would reverse.


        The UCBR found that Claimant, in front of three- and four- year-old children, asked her supervisor for a new shift.  The supervisor replied that the requested shift was not available but offered Claimant an alternative shift.  (UCBR's Findings of Fact, No. 3.)  "The [C]laimant became upset, put her hands up, and proclaimed, 'I have seniority.'"  (*Id*., No. 4.)  Claimant then left the classroom, entered an office, and requested to again speak with her supervisor.  (*Id*., No. 5.)  During the meeting, Claimant became "loud" and "visibly upset."  (*Id*., No. 6.)  The

supervisor contacted the childcare director, who joined the meeting along with the executive director. (*Id.*)

Based on these findings, the UCBR concluded that "[C]laimant's boisterous attitude, especially in front of children, is a disregard of the standards of behavior that the employer has a right to expect of an employee." (UCBR's Decision at 2.)[1] I cannot agree.

Whether a claimant's conduct constitutes willful misconduct is a question of law. *Brown v. Unemployment Compensation Board of Review*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). Additionally, whether language spoken by a claimant rises to the level of willful misconduct is determined by evaluating its use in context and in accordance with modern parlance to determine whether it is abusive, vulgar, or offensive. *See Cundiff v. Unemployment Compensation Board of Review*, 489 A.2d 948, 951 (Pa. Cmwlth. 1985).

As described by the UCBR, the action and language witnessed by the children was Claimant putting her hands up in the air while stating that she had seniority. Claimant then *appropriately* went to her supervisor's office to further

---

[1] I emphasize that the UCBR did not make a finding that Claimant was "boisterous." In its findings, the UCBR described Claimant as "loud" and "visibly upset" during a meeting with her supervisor, which occurred in an office. (UCBR's Findings of Fact, Nos. 5, 6.) I cannot agree that that "loud" and "visibly upset" is the equivalent of "boisterous," which, as the majority points out, is defined as "noisily turbulent," "loudmouthed and rough in behavior," "completely unrestrained," and "marked by tumultuous violence and fury." Webster's Third New International Dictionary 248 (2002). In this case, the UCBR's findings do not support the conclusion that Claimant engaged in willful misconduct.

discuss her shift request. Although Claimant was "loud" and "visibly upset" while in the office, as acknowledged by both of Employer's witnesses and the majority, Claimant never used offensive, vulgar, or threatening language. (Maj. Op. at 3.) Moreover, the UCBR did not find that Claimant was insubordinate to her supervisor or that she engaged in disruptive behavior, as stated by the majority.[2] (Maj. Op. at 7.)

Claimant's conduct, as detailed in the UCBR's findings, falls short of the type of misconduct this court has determined is willful. *See, e.g., Strong v. Unemployment Compensation Board of Review*, 459 A.2d 57, 59 (Pa. Cmwlth. 1983) ("Abusive language directed to a superior is a form of insubordination which alone may be found to be disqualifying.").

The UCBR found that Claimant displayed emotion while speaking in a loud tone to her supervisor concerning her shift request; without more, I cannot agree that Claimant's actions amounted to willful misconduct.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

---

[2] I also note that the UCBR did not specifically credit the testimony of Employer's witnesses, Dee Searle and Christine Siddique. Rather, the UCBR stated that Employer credibly testified as to the events set forth in the UCBR's findings of fact. (*See* UCBR's Decision at 2.) Although Searle and Siddique testified that Claimant was "irritated," "angry," "very insubordinate," and "volatile," the UCBR made no such findings. As the fact finder, the UCBR may accept or reject the testimony of any witness in whole or in part. *McCarthy v. Unemployment Compensation Board of Review*, 829 A.2d 1266, 1270 (Pa. Cmwlth. 2003). "This [c]ourt will not infer credibility determinations from the decision of the fact finder." *Feinsod v. Unemployment Compensation Board of Review*, 624 A.2d 762, 765 n.6 (Pa. Cmwlth. 1993).