## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin S. Bowman,            :
              Petitioner      :
                          :
           v.             :
                          :
Unemployment Compensation    :
Board of Review,            :    No. 880 C.D. 2015
           Respondent    :    Submitted: November 25, 2015


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MARY HANNAH LEAVITT, Judge[1]
                 HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                       FILED: April 6, 2016

       Kevin S. Bowman (Claimant) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) May 1, 2015 order affirming the Referee's decision denying UC benefits under Section 402(e) of the UC Law (Law).[2] Claimant presents four issues for this Court's review: (1) whether the UCBR erred by failing to recognize the ambiguity in the Pennsylvania Department of Revenue's (Employer) confidentiality policy (Employer's Policy); (2) whether the UCBR erred by finding that Claimant committed willful misconduct when he was never given a warning; (3) whether the UCBR erred by capriciously disregarding evidence of Claimant's prior workplace commendation; and (4) whether the UCBR

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[2] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (relating to discharge for willful misconduct).

erred by finding that Claimant did not have good cause to violate Employer's Policy. After review, we affirm.

Claimant was employed as a full-time tax account collections technician by Employer from October 23, 2006 until October 16, 2014. Employer's Policy prohibits the dissemination of confidential tax information, unless it is specifically related to a work assignment. Violation of Employer's Policy is grounds for discharge. Claimant was or should have been aware of Employer's Policy. Claimant was given permission to email confidential tax information needed to address Claimant's concerns about Employer's computer database to a human resources (HR) representative. However, on several occasions, Claimant emailed confidential tax information to co-workers while complaining about the system and about management. Claimant could have made the same complaints without attaching confidential tax information. The email recipients did not have work assignments related to the disseminated confidential tax information, and there was no business purpose for including it.

In May 2014, Claimant requested accommodations under the Americans with Disabilities Act (ADA),[3] including being excused from mandatory meetings and interactions with management. Claimant was accommodated in accordance with his ADA request. Claimant's decision to disseminate confidential tax information to co-workers was unrelated to his ADA request. Employer discharged Claimant for violating Employer's Policy. Claimant had no adequate justification to violate Employer's Policy. Claimant is able and available for work.

Claimant applied for UC benefits. On October 29, 2014, the Altoona UC Service Center issued a determination denying Claimant UC benefits under Section 402(e) of the Law. Claimant appealed, and a Referee hearing was held. On

_____

[3] 42 U.S.C. §§ 12101-12213.

December 12, 2014, the Referee affirmed the UC Service Center's decision. Claimant appealed to the UCBR which remanded the matter to the Referee to address Section 401(d)(1) of the Law.[4] On May 1, 2015, the UCBR affirmed the Referee's decision. Claimant appealed to this Court.[5]

Initially,

> Section 402(e) of the Law provides that an employee is ineligible for unemployment compensation benefits when his unemployment is due to discharge from work for willful misconduct connected to his work. The employer bears the burden of proving willful misconduct in an unemployment compensation case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

*Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 747-48 n.4 (Pa. Cmwlth. 2000) (citation omitted). "When an employee is discharged for violating a work rule, the employer must prove the existence of the rule and the fact of its violation." *Lewis v. Unemployment Comp. Bd. of Review*, 42 A.3d 375, 377 (Pa. Cmwlth. 2012). "Once the employer has met its initial burden, the burden then shifts to the claimant to show either that the rule is unreasonable or that claimant had good cause for violating the rule." *Cnty. of Luzerne v. Unemployment Comp. Bd. of Review*, 611 A.2d 1335, 1338 (Pa. Cmwlth. 1992).

The law is well established that:

---

[4] 43 P.S. § 801(d)(1) (relating to ability and availability to work).

[5] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence." *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014).

3

> [T]he [UCBR] is the ultimate fact-finder in unemployment compensation matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.

*Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted). This Court has explained:

> Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, in this case, [] Employer, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

Claimant first argues that the UCBR erred by failing to recognize the ambiguity in the Employer's Policy. Specifically, Claimant contends the phrase "work assignment" is so ambiguous that he was not aware that he could not share taxpayer information with his co-workers.

Employer's Policy provides in relevant part:

> All information on tax returns and accompanying documents is confidential. Tax information or other sensitive information, provided to [Employer] by other governmental agencies is considered confidential. Tax information stored in electronic media in computer systems, including personal computers, and information obtained from computer terminals and/or printers, is also confidential tax information.

4

Unless it is part of a *work assignment,* the tax laws of the Commonwealth of Pennsylvania and the United States prohibit employees from accessing, using, discussing, divulging, or disclosing in any manner, any information employees receive because of their access to tax returns or tax information. *Employees may only access, use, discuss or reveal tax information with the taxpayer or the taxpayer's representative, and as appropriate, as an integral part of a work assignment.* Employees may not publish, disclose, or make known, in any manner, any information that discusses or could identify a taxpayer. Employees may not use, for private purposes, any tax information obtained in the course of their employment.

. . . .

Unauthorized release of confidential taxpayer information is a crime, and may result in prosecution under Pennsylvania law. **Employees who access, inspect, divulge or disclose confidential tax information, for other than reasons that are integrally related to a *work assignment,* will be terminated from [Employer's] employment.**

Certified Record (C.R.) Item No. 9, Ex. E-3 (italics added). Further, Claimant signed a confidentiality agreement which included the following:

I understand that, unless it is part of a *work assignment,* the tax laws of the Commonwealth of Pennsylvania and the United States prohibit me from accessing, using, discussing, divulging or disclosing in any manner, any information I may receive because I work with, or have access to, tax returns or tax information. This means that any personal, non-work related reasons [for] accessing, using, discussing, divulging or disclosing any confidential tax information are prohibited.

. . . .

I understand that I should consider everything on tax returns, schedules, worksheets, audit reports, investigative reports, computer files, print outs, listings and books to be **CONFIDENTIAL.** This means I should not access, use, discuss or reveal any information with anyone outside [Employer], including my friends and members of my family. I may only access, use, discuss or reveal tax

5

information with the taxpayers or their specific representative and as appropriate and as *an integral part of a work assignment.*

I understand that if I receive any inappropriate question which is not related to my *work assignment,* from anyone, about information on a tax return, schedule, worksheet, audit report, investigative report, computer file, print out or listing or concerning taxes, I must immediately refer the questioning person to my supervisor for an answer. **I will not access for, or give any information to, an unauthorized individual.** This also applies to questions about [Employer's] internal procedures concerning the state's taxes and collection of them in general.

C.R. Item No. 3, Ex. 12 (italics added).

Claimant sent six emails to two co-workers that contained confidential information. Claimant asserts that he was not aware that he could not share the information with whom he worked because they all shared the same work and work from the same data pool. Further, Claimant believed that because he was permitted to share the information with Employer's labor relations analyst Jane Baldo (Baldo), he was permitted to share it with his co-workers as well.

Claimant testified at the December 11, 2014 Referee hearing:

EL [Employer's Lawyer] Can I direct your attention to the third paragraph [of Employer's Policy], please?

C[laimant] Okay.

EL Would you agree that the last sentence in there indicates that any personal, non-work related reasons for accessing, using, discussing, divulging, or disclosing any confidential tax information are prohibited? Would you agree that is what the document says?

. . . .

C What you read, yes, that's what you read.

. . . .

6

> EL  And you agree that your e[]mail [to your co-workers] was for highlighting what you perceived to be inefficiencies with the work system that you have to work as part of your job, correct?
>
> C  Yes, we all work the same.
>
> EL And you would agree the e[]mail that you sent [to your co-workers] contained confidential tax information that you had while working on a work assignment.
>
> C Say that again.
>
> EL You would agree that the e[]mail that you sent [to your co-workers] contained work information that you obtained while you were working on a work assignment, correct?
>
> C  Yes.

C.R. Item No. 9 at 43.   Further, concerning the information Claimant revealed to

Baldo, Employer's labor relations' chief Stacy Hastings (Hastings) testified:

> CL [Claimant's Lawyer]  What was your assessment of the e[]mail exchange between [] Claimant and [] Baldo?
>
> EW3 [Hastings]  I was aware of the e[]mails as they were going on.  I felt that [] Baldo was doing everything she could to investigate his concerns.  I knew that he was sending her screen prints, because she talked about it jamming up her inbox, due to too much data and having to delete things.  And I agreed that she needed to have that information to investigate his concerns and his complaints.
>
> R[eferee]  Just to be clear, you were aware that the e[]mails between [] Claimant and – I'm sorry. . .
>
> EL [] Baldo.
>
> R  . . . [] Baldo were of a confidential nature?
>
> EW3  I knew that they contained confidential taxpayer information, yes.
>
> . . . .

CL  And it's your contention that that was work-related within the definition of the policy?

EW3  Absolutely.  I know that [] Linda Miller, our director asked her to meet with [Claimant] and that as a result of that, he had concerns and that he was forwarding her confidential taxpayer information so she could take that information and see if what he was saying was accurate or not.

CL  And that was part of -- again, your testimony is going to be that that was part of a work assignment as well?

EW3  That was her work assignment, yes.

*Id.* at 53.

The UCBR opined:

In the present case, the credible testimony of [E]mployer's witness establishes that it has a policy, which prohibits the dissemination of confidential tax information, unless it is part of a work assignment.  Violation of the policy is grounds for discharge.  [C]laimant was aware of the policy.  [C]laimant acknowledges distributing confidential tax information to co[-]workers.   The [UCBR] rejects [C]laimant's assertion that there was a valid work assignment as to the basis of his dissemination of this information.   [C]laimant was complaining to his co[-]workers regarding problems with the system and the inefficiencies of the management.   The purpose of the dissemination was not to resolve the problems, but simply to complain.  This is unlike the situation where [C]laimant emailed confidential tax information to the HR representative, who needed the information to properly address [C]laimant's concerns.

UCBR Dec. at 3.   We discern no error in the UCBR's reasoning.   The above testimony and exhibits are substantial evidence which support the UCBR's findings and conclusions.   Accordingly, we hold that there was no ambiguity surrounding the term "work assignment," and the UCBR properly applied Employer's Policy.

8

Claimant next contends that the UCBR erred by finding Claimant committed willful misconduct when he was never given a warning.[6] Claimant asserts that *Oyetayo v. Unemployment Compensation Board of Review,* 110 A.3d 1117 (Pa. Cmwlth. 2015), supports his position. We disagree.

The willful misconduct in *Oyetayo* consisted of a violation of employer's policy prohibiting the use of employer's materials and equipment for personal use. Like the instant case, claimant contended that the policy was ambiguous. The policy, however, contained a clause allowing for *de minimis* personal usage. It was around the phrase "*de minimis*" that claimant centered his argument. The UCBR found that because claimant was warned several times and said warnings specifically advised him that no personal usage of employer's equipment was permitted, his actions constituted willful misconduct.

Here, Employer's Policy is unequivocal: "Employees may only access, use, discuss or reveal tax information with the taxpayer or the taxpayer's representative, and as appropriate, **as an integral part of a work assignment**." C.R. Item No. 9, Ex. E-3 (emphasis added). "**Employees who access, inspect, divulge or disclose confidential tax information, for other than reasons that are integrally related to a work assignment**, **will be terminated from [Employer's] employment**."[7] *Id*. (emphasis in original). Clearly, a warning was not required to make Claimant aware that attaching confidential tax information to emails he sent to

---

[6] Notably, Claimant admits that "a warning is not a prerequisite to a finding of willful misconduct[.]" Claimant Br. at 10.

[7] Employer's Division Chief William Tharp (Tharp) testified that under Employer's Policy, the confidentiality agreement is a zero-tolerance work rule. C.R. Item No. 4 at 12. Tharp further testified that "on a quarterly basis, [Employer], as a whole, sends out the confidential taxpayer information agreement out [sic] to all the employees to review. That way they are notified. We have also notified them in staff meetings as well about taxpayer confidentiality." *Id*. at 9. Tharp declared that Claimant should have been aware that sending the email violated both Employer's Policy and the confidentiality agreement. *Id.* at 13.

co-workers complaining about the system and management was a violation of Employer's Policy that would result in employment termination. Accordingly, the UCBR properly concluded that Claimant committed willful misconduct.

Claimant next argues that the UCBR erred by capriciously disregarding evidence of Claimant's prior workplace commendation. Specifically, Claimant contends that the UCBR ignored the fact that Claimant received Employer's Innovation Award in June 2014 which demonstrated that Employer encouraged Claimant to scrutinize the performance of work in the workplace, and explained why he viewed workplace efficiency as important.

> Capricious disregard is a deliberate disregard of competent evidence that one of ordinary intelligence could not possibly avoid in reaching the result. This standard will generally assume a more visible role on consideration of negative findings and conclusions. Nevertheless, it is not to be applied in such a manner as would intrude upon the agency's fact-finding role and discretionary decision-making authority.
>
> Further, 'where there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard.' [*Leon E.*] *Wintermyer,* [*Inc., v. Workers' Comp. Appeal Bd. (Marlowe)*]*,* 812 A.2d [478], 488 n.14 [(Pa. 2002)].

*Diehl v. Unemployment Comp. Bd. of Review,* 4 A.3d 816, 824 (Pa. Cmwlth. 2010), *reversed on other grounds,* 57 A.3d 1029 (Pa. 2012). Here, because substantial evidence supports the UCBR's findings, and the findings support the conclusions, the UCBR did not capriciously disregard Claimant's evidence of his prior work commendation. Thus, we find no reason to disturb the UCBR's decision.

Lastly, Claimant argues that the UCBR erred by finding Claimant did not have good cause to violate Employer's Policy. Specifically, Claimant contends

10

that he had good cause for **not understanding** Employer's policy. *See* Claimant Br. at 14. We disagree.

> The issue of whether good cause exists is a factual one for the [UCBR] to resolve. *Wideman v. Unemployment [Comp.] [Bd.] of Review, . . .* 505 A.2d 364, 368 ([Pa. Cmwlth.] 1986). 'The [UCBR], as ultimate fact finder, determines the weight and credibility of the evidence and is free to reject even uncontradicted testimony.' *Id.*

*Ellis v. Unemployment Comp. Bd. of Review,* 59 A.3d 1159, 1164 (Pa. Cmwlth. 2013). Here, the UCBR specifically "reject[ed] [C]laimant's assertion that there was a valid work assignment as to the basis of his dissemination of this information." UCBR Dec. at 3. Accordingly, the UCBR found "[C]laimant had no justification to violate [Employer's Policy]." UCBR Dec. at 2. It was within the exclusive province of the UCBR to make this finding and Claimant cannot impugn it on appeal. Accordingly, the UCBR properly found that Claimant did not have good cause to violate Employer's Policy.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

11

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin S. Bowman,                                  :
                        Petitioner               :
                                                 :
            v.                                   :
                                                 :
Unemployment Compensation                        :
Board of Review,                                 :       No. 880 C.D. 2015
                        Respondent               :

## O R D E R

AND NOW, this 6th day of April, 2016, the Unemployment Compensation Board of Review's May 1, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge