W. R. Grace, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 15, 1982, before Judges Blatt, Williams, Jr. and Craig, sitting as a panel of three.

*William W. Runyeon,* with him *Richard L. Orwig, Edelman, O'Pake, Malsnee & Orwig,* for petitioner.

*Charles Hasson,* Associate Counsel, with him *Richard C. Lengler,* Associate Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

Opinion by Judge Craig, January 10, 1983:

In this unemployment compensation case, the petitioner, W. R. Grace & Co., appeals from a decision by the board which, affirming the referee's decision below, granted benefits to Peggy R. Gottschall under the voluntary layoff and necessitous and compelling cause provisions of the Unemployment Compensation Act, Section 402(b),[1] and which also found her available for suitable work under Section 401(d).[2] We affirm.

The facts are not in dispute. The petitioner employed Mrs. Gottschall as a "packer/stacker" for approximately three and one-half years. Because sales

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b).

[2] 43 P.S. §801(d).

did not justify running company machinery fulltime and because Mrs. Gottschall did not have sufficient seniority, the petitioner bumped the claimant from her first shift duties on January 16, 1981, offering her the same type of employment for the second and third shifts, or the option of taking a voluntary layoff with recall rights under an oral agreement between Grace and its employees.

Mrs. Gottschall exercised her voluntary layoff option apparently because she was having difficulty finding someone to care for her small school-age children and because she was reluctant to transport them to a babysitter late at night.[3]

The petitioner contends (1) that Mrs. Gottschall's quitting was not necessary in that her attempt to secure care for her children was inadequate and (2) that, because she declined work on the second or third shifts, she so limited her availability for suitable work that she removed herself from the labor market. We disagree.

In 1980, the legislature modified Section 402(b) to include the following provision:

An employee shall be ineligible for compensation for any week—

. . . .

(b)   In which his employment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . . *Provided . . . [t]hat no otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position pursuant to a labor-management contract agreement, or pursuant to an established employer*

---

[3] The referee referred to the claimant's difficulty as having "babysitter problems."

*plan, program or policy.* (Emphasis added to identify amendment.)[4]

The terms of Section 402(b) are unambiguous. They provide that what might otherwise be a basis for ineligibility, leaving work without necessitous and compelling cause, is irrelevant so long as:

(1) the employee is "otherwise eligible" for unemployment compensation benefits; and

(2) his unemployment is due to exercising a voluntary layoff option either negotiated by contract or established unilaterally by the employer.

Here, there was substantial evidence to support the referee's finding that Grace afforded Mrs. Gottschall the option of taking a voluntary layoff with recall rights from her packer/stacker position under an established, albeit oral, employer plan.[5] Thus, so long as Mrs. Gottschall was "otherwise eligible," we need not consider her personal reasons for declining the second and third shift options, which otherwise might or might not have been a basis for finding that she voluntarily quit.[6]

---

[4] Act of July 10, 1980, P.L. 51, No. 108, §13 (effective immed.).

We note that when the legislature amended §402(b) of the Act, it simultaneously amended §401(d), pertaining to availability, using identical language.

[5] Indeed, the employer's representative testified that when Grace planned to bump Mrs. Gottschall from her first shift position, it provided her with the following options:

[W]e stated to her that with her seniority she was capable of moving to second shift . . . to third shift, or the last option which would have been her's also, *would be to take a voluntary lay off.* (Emphasis added.)

[6] *Compare Pittsburgh Pipe & Coupling Co. v. Unemployment Compensation Board of Review,* 401 Pa. 501, 165 A.2d 374 (1961) with *Hower v. Unemployment Compensation Board of Review,* 54 Pa. Commonwealth Ct. 139, 420 A.2d 36 (1980).

The petitioner's second contention, that Mrs. Gottschall has removed herself from the labor market by confining her availability primarily to fulltime day-shift employment,[7] goes to the question of whether she is "otherwise eligible" to receive benefits here, under Section 401(d) of the Act.

First, we note that the referee found Mrs. Gottschall able and available for fulltime work[8] and there is uncontradicted evidence in the record to support that finding.

Second, the two cases which the petitioner cites to support its argument, *Unemployment Compensation Board of Review v. Wilson*, 24 Pa. Commonwealth Ct. 21, 354 A.2d 260 (1976) and *Walden v. Unemployment Compensation Board of Review*, 41 Pa. Commonwealth Ct. 514, 399 A.2d 824 (1979), are distinguishable on their facts. In both cases, the claimants limited their availability to the period between 10:00 a.m. and 3:00 p.m.; here, Mrs. Gottschall testified that she was available for fulltime employment. Because those cases are inapposite and because the petitioner presented no other evidence to rebut the presumption that an unemployed worker who registers for unemployment is able and available for work, and thus eligible for benefits, *Penn Hills School District v. Unemployment Compensation Board of Review*, 496 Pa. 620, 437 A.2d 1213

---

[7] Mrs. Gottschall also testified that she might be available for second-shift duties every other week, based on her husband's work schedule.

[8] Finding of Fact No. 5.

QR: Are you able and available for certain hours, do you have a restriction, or any limitation or restriction?

AC: Every other week I could work second shift.

. . . .

QR: Then you are stating that at the present time, as far as full time you are only available for the first shift?

AC: Right.

(1981), we conclude that Mrs. Gottschall is entitled to benefits under Section 402(b), as amended.

Accordingly, we affirm.

ORDER

Now, January 10, 1983, the decision of the Unemployment Compensation Board of Review, No. B-195297, is hereby affirmed.