Rosemarie A. BEDDIS, Petitioner

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 11, 2010.

Decided Oct. 18, 2010.

Charles W. Campbell, Norristown, for petitioner.

Jonathan D. Koltash, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge BROBSON.

Petitioner Rosemarie A. Beddis (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board), affirming a Referee's determination that Claimant was not eligible for unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (Law) [1] because she voluntarily severed her employment with Saint Grobain Abrasives (Employer) "without cause of a necessitous and compelling nature." Concluding that the Board's decision is faithful to precedent interpreting Section 402(b) of the Law, we affirm the Board's order.

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

Following her separation from employment, Claimant applied for unemployment compensation benefits. The Norristown UC Service Center (Service Center) issued a determination, denying benefits pursuant to Section 402(b) of the Law. Claimant appealed. At a hearing before the Referee, Claimant, proceeding *pro se*, testified on her own behalf. Employer also appeared without counsel at the hearing through a representative, who testified on Employer's behalf. Following the hearing, the Referee issued his decision, affirming the Service Center's determination and denying benefits.

Claimant, represented by counsel, appealed to the Board. In addition to challenging the Referee's decision, Claimant asked the Board to reopen the record to offer additional evidence. In its decision, the Board adopted and incorporated by reference the Referee's decision. It also denied Claimant's request to reopen the record on remand to the Referee, concluding that Claimant failed to establish "good cause" to support the request. Claimant, not her counsel, wrote to the Board, asking that the Board reconsider its decision. The Board denied the request for reconsideration. This timely appeal followed.

▬ On appeal,[2] Claimant does not dispute any of the Referee's factual findings, which the Board adopted and incorporated in its decision. (Reproduced Record (R.R.) at 45.) Accordingly, those findings of fact are binding on appeal. *Campbell v. Unemployment Comp. Bd. of Review,* 694 A.2d 1167, 1169 (Pa.Cmwlth. 1997). The undisputed facts in this case are as follows:

1. The claimant was last employed with Saint Grobain Abrasives performing full-time order entry/reception work/administrative work at a pay rate of $17.10 per hour. The claimant was employed from 1997 and her last day of work was April 30, 2009.

2. The claimant's job changed in December; the claimant was no longer doing accounts payable.

3. The claimant was not happy with her job.

4. In January 2009, the employer advised the employees that several plants were laying off; the employer experienced voluntary and involuntary laid offs.

5. The claimant became aware that in April 2009, the order entry function would go to the Corporate Office.

6. The claimant approached her boss and said she might be interested in "a package."

7. The claimant requested to be laid off.

8. The employer did not advise the claimant that her job was being eliminated.

9. The employer offered the claimant a severance package and told her the last [day] she would be working was April 30, 2009.

10. The claimant voluntarily left her job.

(Reproduced Record (R.R.) at 36–37.)

Claimant raises only two issues on appeal. First, Claimant argues that because her unemployment stemmed from her decision to accept a voluntary layoff offered by her employer, the Board erred in find-

2. In unemployment compensation cases, the Court's review is limited to determining whether constitutional rights were violated, whether errors of law were committed, and whether findings of fact are supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review,* 869 A.2d 1095, 1103 n. 2 (Pa.Cmwlth.), *appeal denied,* sub nom., *Huntzinger v. Unemployment Comp. Bd. of Review,* 585 Pa. 699, 889 A.2d 90 (2005).

ing her ineligible for benefits under Section 402(b) of the Law. Alternatively, Claimant argues that this matter should be remanded to the Board or the Referee to allow additional evidence on whether Employer had established a voluntary separation plan. In other words, Claimant challenges the Board's refusal to remand the matter to the Referee to allow Claimant to offer additional evidence.

■■■ We first address Claimant's argument that she should have been eligible for benefits by virtue of what is commonly referred to as the voluntary layoff provision (VLO) in Section 402(b) of the Law. Resolution of this issue will require this Court to examine and apply the following statutory language:

> An employe shall be ineligible for compensation for any week—
>
> . . . .
>
> (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature ...; Provided, That ... no otherwise eligible claimant shall be denied benefits for any week his unemployment is due to exercising the option of accepting a layoff, from an available position pursuant to a labor-management contract agreement, or pursuant to an established employer plan, program or policy. . . .

Section 402(b) of the Law. It bears noting that, consistent with her position, Claimant does not claim on appeal that her job was in immediate jeopardy and thus she had a "necessitous and compelling" reason to quit her job. Indeed, if the VLO provision applies, an employee who voluntarily leaves work and is otherwise eligible is entitled to benefits under the Law regardless of whether her job was at risk.

The General Assembly added the VLO provision, and similar provisions, to the Law in 1980.[3] Our first reported decision addressing the new language was *W.R. Grace & Co. v. Unemployment Compensation Board of Review*, 71 Pa.Cmwlth. 86, 455 A.2d 729 (1983). The claimant in that case was employed as a "packer/stacker." A decline in sales required the employer to scale back on its business. Because of the claimant's lack of seniority, the employer offered her a similar position, but different shifts. The employer also offered the claimant the option of taking a voluntary layoff "with recall rights" under an oral agreement between the employer and its employees. The claimant chose the voluntary layoff and sought unemployment benefits. The referee and the Board approved the benefits, and the employer appealed.

On appeal, the employer argued that the claimant was ineligible for benefits because (a) she did not have necessitous and compelling reasons for quitting her job, and (b) she did not accept employer's offer of work on the second and third shifts and thus voluntarily removed herself from the entire labor market. We affirmed the Board's determination, relying on the VLO provision. Interpreting that language, we held:

> The terms of Section 402(b) are unambiguous. They provide that what might otherwise be a basis for ineligibility, leaving work without necessitous and compelling cause, is irrelevant so long as:
>
> (1) the employee is "otherwise eligible" for unemployment compensation benefits; and
>
> (2) his unemployment is due to exercising a voluntary layoff option ei-

---

**3.** Act of July 10, 1980, P.L. 521 (Act 108). Similar statutory language also appears in Sections 401(d) and 402(a) of the Law. *See* 43 P.S. §§ 801(d), 802(a).

ther negotiated by contract or established unilaterally by the employer. *W.R. Grace*, 455 A.2d at 730. Based on this interpretation of Section 402(b) of the Law, we rejected the employer's invitation to review whether the claimant had a "necessitous and compelling" reason to quit:

> Here, there was substantial evidence to support the referee's finding that Grace afforded Ms. Gottschall the option of taking a voluntary layoff with recall rights from her packer/stacker position under an established, albeit oral, employer plan. Thus, so long as Mrs. Gottschall was "otherwise eligible," we need not consider her personal reasons for declining the second and third shift options, which otherwise might or might not have been a basis for finding that she voluntarily quit.

*Id.* (footnotes omitted). The Court also rejected the employer's contention that by rejecting the second and third shift positions, the claimant rendered herself ineligible for benefits by voluntarily withdrawing from the workforce. *See* Section 401(d)(1) of the Law, 43 P.S. § 801(d)(1) (providing that claimant must be "able to work and available for suitable work" to receive benefits). We thus affirmed the Board.

In isolation, we would normally ascribe to the word "layoff," for which the Law provides no express definition, its common meaning and approved usage. 1 Pa.C.S. § 1903(a). As Claimant points out, "layoff" is a term that, in common usage, refers to "[t]he termination of employment at the employer's instigation," which can be "either temporary . . . or permanent." Black's Law Dictionary 969 (9th ed.2009). Nonetheless, our decisions since *W.R. Grace* addressing applicability of the VLO provision have ascribed significance to the particular character of the layoff in *W.R. Grace*—that being a "voluntary layoff *with*

recall *rights*." *W.R. Grace*, 455 A.2d at 730 (emphasis added).

This Court's adoption of this narrower definition of the term "layoff" has yielded nearly three decades of rulings, rejecting consistently any argument that the VLO proviso applies to a *permanent* separation from employment, and, in particular, permanent separations accompanied by some form of consideration from the employer— *e.g.*, a severance or early retirement "package." In *Sievers v. Unemployment Compensation Board of Review*, 124 Pa. Cmwlth. 52, 555 A.2d 260 (1987), *aff'd*, 520 Pa. 83, 551 A.2d 1057 (1989), the claimant became unemployed as part of an operation and leveraging streamlining plan that his employer offered to all of its management employees. "The plan was necessary in order to effectuate necessary staff reductions by allowing management employees to voluntarily terminate their employment and thus avoid involuntary staff reductions." *Sievers*, 555 A.2d at 261. The claimant accepted the employer's plan and its accompanying benefits, thereby voluntarily terminating his employment, even though continuing work was available to him. *Id.* at 261–62.

The claimant applied for unemployment compensation benefits, which both the referee and the Board denied under Section 402(b) of the Law because the claimant voluntarily terminated his employment without necessitous and compelling reason to do so. On appeal, the claimant argued that he was entitled to benefits under the VLO provision, because his separation came about as a result of an employer-planned workforce reduction, which the claimant accepted. We rejected this argument:

> Claimant asserts that he did not voluntarily terminate his employment but was laid off. However, Claimant's testimony before the referee does not sup-

port this contention. When asked by the referee whether or not his departure from his employment was *a temporary lay off* Claimant responded "No, this was permanent."

*Id.* at 262 (emphasis added). Rejecting the claimant's reliance on the VLO provision because his severance was permanent, and not a temporary layoff, the Court then proceeded to analyze whether the claimant was barred from receiving benefits under Section 402(b) of the Law—*i.e.*, did he voluntarily terminate his employment "without cause of a necessitous and compelling nature." Based on the record, we concluded that there was substantial record evidence to support the referee's findings that the claimant was barred from receiving benefits under Section 402(b) of the Law and thus affirmed the Board. A sharply divided Pennsylvania Supreme Court affirmed in a per curiam order.[4]

Faithful to *Sievers*, in *Flannery v. Unemployment Compensation Board of Review*, 125 Pa.Cmwlth. 64, 557 A.2d 52 (1989), we refused to treat an employer's early retirement plan as the type of voluntary layoff plan that would be covered under the VLO provision of the Law. *Flannery* guided our disposition of *George v. Unemployment Compensation Board of Review*, 767 A.2d 1124, 1128 n. 10 (Pa. Cmwlth.2001), where we held that the VLO provision "does not apply to situations involving acceptance of severance or retirement incentives."

In *Renda v. Unemployment Compensation Board of Review*, 837 A.2d 685 (Pa. Cmwlth.2003) (en banc), a claimant asked this Court to revisit our ruling in *Sievers*. An en banc panel of this Court declined and—consistent with *Sievers*, *George*, and *Flannery*—agreed that the VLO provision in the law did not apply to the claimant, who voluntarily terminated his employment in response to an offer of an enhanced income security plan for those who chose to leave the company. *Renda*, 837 A.2d at 694. Rejecting the request, the Court analyzed whether the claimant had a necessitous and compelling reason to quit in order to determine whether he might nonetheless be eligible for benefits. Finding that the claimant was not under any imminent threat of termination when he

4. Three Justices dissented, with Justice Papadakos authoring the dissenting opinion. Among other things, Justice Papadakos took issue with this Court's drawing a distinction, for purposes of analyzing Section 402(b), between a temporary layoff and a permanent layoff. He also rejected as irrelevant for purposes of determining benefit eligibility whether the claimant received a "package," or a severance. He reasoned:

It takes no great leap of logic to conclude that Appellant here exercised the *option* of *accepting a layoff* under an established employer plan, program or policy. The layoff was permanent, of course, and was induced not by the prospect of certain termination, but by the prospect of being forced to play the employer's version of Russian roulette (with a 30% chance of being "hit".)

. . .

I fear that if Commonwealth Court's opinion in this case is allowed to stand, it will encourage sophisticated schemes whereby many employers will adopt some variant of what [the employer] did here to force early retirements or "voluntary" layoffs. The temptation to do this will be especially great in periods when an employer faces a financial downturn, or when the bulk of its employees become older and achieve higher wage benefits. To deny unemployment compensation benefits to employees caught in such circumstances seems to me to be contrary to the most fundamental goals of the statute. Nor should we be concerned that this employee will receive double benefits—unemployment compensation and severance pay. One offsets the other and only the balance, if any, is paid to the terminated employee. *Sievers*, 520 Pa. at 87–88, 551 A.2d at 1058–59 (Papadakos, J., dissenting) (emphasis in original).

elected to quit, this Court affirmed the denial of benefits. *Id.* at 691–93.[5]

These cases illustrate this Court's consistent interpretation and application of the VLO provision since its inclusion in the Law three decades ago.[6] Our precedent has neither invited Supreme Court scrutiny nor corrective action by our General Assembly. And while she claims that hers is a circumstance that can be distinguished from our precedent on the facts, Claimant offers no compelling argument why we should unsettle an area of law that has been settled for so long.

In this case, the Board found that Employer offered and Claimant accepted a severance package, effectively ending the employment relationship. Under our precedent set forth above, the Board did not apply the VLO provision of Section 402(b) of the Law in this case because Claimant separated permanently (not temporarily) from her employment. Instead, the Board looked to whether Claimant had a necessitous and compelling reason to quit and found that she did not. *Cf. Eby v. Unemployment Comp. Bd. of Review,* 157 Pa.Cmwlth. 10, 629 A.2d 176 (1993) (holding claimant had necessitous and compelling reason to accept employer's separation incentive and thus was entitled to unemployment compensation benefits). We, therefore, find no legal error in the Board's decision, upholding the Referee's decision to deny benefits to Claimant.

■ Claimant also argues that the Board erred when it denied her request to allow additional evidence to be introduced. Claimant asserts that the Board's denial violated her due process rights. Specifically, Claimant contends that she has a letter, detailing Employer's severance package, which she intended to present at the hearing but failed to do so. She explains that she failed to introduce the letter because, although now represented by counsel, she was not represented by an attorney at the hearing and was not advised that she could present such evidence. The Board rejected Claimant's request to reopen the record and remand for additional evidence, concluding that Claimant failed to establish good cause for remand.

This Court has held that to fulfill the due process rights of an unrepresented person in an unemployment compensation case:

> The referee has a responsibility ... to assist a pro se claimant at a hearing so that the facts of the case necessary for a decision may be adequately developed to "insure that compensation will not be paid in cases in which the claimant is not eligible and that compensation will be paid if the facts, *thoroughly developed,* entitled the claimant to benefits." The referee, of course, need not advise a party on evidentiary questions or on specific points of law but must act reasonably in assisting in the development of the *necessary* facts, and any failure to develop an adequate record must be

---

**5.** Two of the judges hearing the case dissented, with Judge Friedman authoring the dissenting opinion. Although the dissent disagreed with the majority's analysis of whether the claimant has a necessitous and compelling reason to quit, it did not take issue with the majority's analysis of the applicability of the VLO provision to the claimant's circumstances.

**6.** There is also some historical context to this Court's interpretation of the VLO provision as applying to only temporary layoffs. *See* Daniel R. Schuckers & James K. Bradley, *The Proper Use of the Declaration of Public Policy Section of the Pennsylvania Unemployment Compensation Law,* 87 Dick. L.Rev. 507 (1983) (couching Act 108 as legislative reaction to court decisions addressing "share the work" plans).

prejudicial to the claimant and not mere harmless error or else a reversal will not be found.

*Bennett v. Unemployment Comp. Bd. of Review,* 66 Pa.Cmwlth. 455, 445 A.2d 258, 259–60 (1982) (citations omitted). Furthermore, the Pennsylvania Code specifically provides that, in proceedings before the Board:

> [T]he tribunal may examine the parties and their witnesses. Where a party is not represented by counsel the tribunal before whom the hearing is being held should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties.

34 Pa.Code § 101.21(a).

██ In this case, Board forms clearly apprised Claimant of her right to counsel, right to present evidence and testimony, and right to present witnesses and cross-examine witnesses. (Certified Record, Item No. 6 at p. 2, 9) The Referee specifically restated these rights as required by the Pennsylvania Code. (R.R. at 6.) The Referee also explained to Claimant that her rights were fully set forth in the Hearing Notice that Claimant received. (*Id.*) Claimant affirmed that she understood her rights. (*Id.*) Thus, the Referee and the Board afforded Claimant her full due process rights to present evidence. She simply failed to avail herself of the opportunity. A lay person, moreover, "choosing to represent [herself] in a legal proceeding must, to some extent, assume the risk that [her] lack of expertise and training will

prove [her] undoing." *Vann v. Unemployment Comp. Bd. of Review,* 508 Pa. 139, 148, 494 A.2d 1081, 1086 (1985). Under these circumstances, Claimant's due process rights were not violated and the Board did not abuse its discretion. We cannot conclude, therefore, that the Board erred in denying Claimant's request for remand to present additional evidence.[7]

Accordingly, we affirm the order of the Board.

### ORDER

AND NOW, this *18th* day of *October*, 2010, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

---

**7.** Furthermore, Claimant asserts that the evidence she would adduce on remand would describe in greater detail the nature of the Employer's voluntary severance package in this case. The nature or specificity of the package, however, is not a material fact driving the outcome of this case. As noted above, it is the permanent nature of Claimant's separation of employment, which is not in dispute, that removed her from benefit eligibility under the VLO provision. Admission of the letter detailing Employer's plan and related testimony thus would not assist in developing a *necessary* fact. *See Bennett,* 445 A.2d at 259–60.