IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Regional Port Authority, :
                 Petitioner :
 :
         v. : No. 1106 C.D. 2017
 : Argued: June 6, 2018
Unemployment Compensation Board :
of Review, :
                 Respondent :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT            FILED:  July 20, 2018

        The Philadelphia Regional Port Authority (Employer) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) that granted benefits to Rosemary Boyle (Claimant). In doing so, the Board affirmed the decision of the Referee that Claimant was eligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law)[1] because she opted to participate in a voluntary separation incentive program offered by Employer. For the following reasons, we affirm the Board.

## Background

        Claimant began working for Employer as an administrative assistant on May 28, 2002. On January 20, 2017, Claimant separated from Employer as a result of her participation in a "Voluntary Separation Incentive Program" offered by

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).

Employer. Certified Record (C.R.) Item No. 9, Exhibit C-1, at 1. Claimant applied for unemployment compensation benefits, stating she was forced to "retire for downsizing reasons." C.R. Item No. 2, at 3. On February 21, 2017, the Scranton UC Service Center issued a Notice of Determination finding Claimant eligible for benefits under Section 402(b) of the Law because "she accepted an incentive" for a layoff. C.R. Item No. 5, at 1. Employer appealed, and a hearing was conducted by a Referee.

At the hearing, Claimant presented a November 28, 2016, written memorandum that Employer sent to all employees stating that Employer would reduce its workforce by 30 percent and would eliminate positions "across all levels and functional areas." C.R. Item No. 9, Exhibit C-1 at 1. The memorandum stated that under its Voluntary Separation Incentive Program, any employee who participated would receive $1,500 for each year of service, up to a maximum of $25,000. Claimant testified that she believed that her position would be eliminated because she "had a supervisor that constantly asked [her] when [she was] retiring." Notes of Testimony (N.T.), 3/29/2017, at 7. Further, management had advised several employees that they were "safe" from the forthcoming terminations, but Claimant did not receive this assurance. N.T. at 9. For these reasons, Claimant opted to participate, and on December 19, 2016, she executed a Separation and Release Agreement. However, on December 28, 2016, Claimant sent a note to Employer's human resources department, stating that she executed the Separation and Release Agreement under duress and would have preferred to continue to work. On cross-examination, Claimant conceded that she did not know with certainty that her position would be eliminated, but chose to participate in the incentive program because she feared losing her job and her health insurance.

2

Edward Henderson, Director of Finance, testified on behalf of Employer. Because of overstaffing, Employer developed the Voluntary Separation Incentive Program to minimize involuntary terminations. Claimant received $22,050 for her participation. Henderson could not say whether Claimant would have been involuntarily terminated had she chosen to stay.

The Referee affirmed the determination of the Service Center. The Referee held that Claimant was eligible for benefits under the Voluntary Layoff Option (VLO) Proviso of Section 402(b) of the Law, which states as follows:

> An employe shall be ineligible for compensation for any week –
>
> ***
>
> (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature…Provided further, That *no otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff*, from an available position pursuant to a labor-management contract agreement, or *pursuant to an established employer plan, program or policy*[.]

43 P.S. §802(b) (emphasis added). The Referee explained the significance of the VLO Proviso as follows:

> The Pennsylvania Courts have held the [VLO] Proviso applies to claimants who leave employment voluntarily pursuant to a labor management contract agreement or pursuant to an established employer plan, program or policy, regardless of whether the layoff is temporary or permanent in nature, and includes employer initiated early retirement packages offered pursuant to a workforce reduction.
>
> Here, the Referee finds that the Employer's Voluntary Separation Incentive Program which was established due to a 30% reduction in staff that the Employer was anticipating falls within the provisions of the VLO Proviso. The Claimant

3

resigned to accept a financial incentive as part of an employer-initiated workforce reduction plan.

The Claimant is "otherwise eligible" as she remained able and available for suitable work. The Referee credits the testimony of the Claimant that she wanted to continue working for the Employer and advised the Human Resources Director that she believed that her position would be eliminated, and that was the reason she was accepting the incentive program.

Therefore, benefits are granted, under the VLO Proviso and Section 402(b) of the Pennsylvania Unemployment Law.

Referee Decision and Order, 3/30/2017, at 3; Reproduced Record at 7a (R.R.__).

Employer appealed to the Board, arguing that the VLO Proviso was inapplicable to its Voluntary Separation Incentive Program. First, it was not an "established" plan and, second, Claimant's position had not been targeted for elimination. Both elements, Employer argued, are essential requirements of the VLO Proviso. The Board rejected Employer's argument and adopted the findings of fact and conclusions of law of the Referee. Employer then petitioned for this Court's review.

**Appeal**

On appeal,[2] Employer raises two issues. First, it argues that it was denied due process because the VLO Proviso was not specified in the UC Service Center's determination and, thus, Employer did not know it would be an issue before the Referee. Second, Employer argues the Board erred in finding that Employer's Voluntary Separation Incentive Program was an "established plan" under the VLO

---

[2] In reviewing the Board's adjudication, this Court determines whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of facts are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Brown v. Unemployment Compensation Board of Review*, 49 A.3d 933, 936 n.4 (Pa. Cmwlth. 2012).

4

Proviso because Claimant's position was not specifically targeted for elimination. Claimant responds that Employer waived its due process argument by not raising it before the Board and, in any case, the Board properly interpreted the VLO Proviso in Section 402(b) of the Law.

### I. Due Process

In its first issue, Employer asserts that the Referee raised the VLO Proviso *sua sponte*. The UC Service Center held that Claimant was entitled to benefits because she had left work for "cause of a necessitous and compelling nature" under Section 402(b) of the Law. C.R. Item No. 5, at 1. Because Employer did not know the VLO Proviso was going to be an issue at the hearing, it was denied due process.

Claimant responds that Employer waived its due process challenge by not raising it in its appeal before the Board. *Reading Nursing Center v. Unemployment Compensation Board of Review*, 663 A.2d 270, 275 (Pa. Cmwlth. 1995) (holding employer's due process claim was waived by failing to raise it before the Board). In any case, the UC Service Center's determination found Claimant eligible under Section 402(b) of the Law, which includes the VLO Proviso.

In an unemployment compensation proceeding, the referee considers the issues "expressly ruled upon" by the local service center, unless the parties agree otherwise. 34 Pa. Code §101.87.[3] The UC Service Center found Claimant eligible

---

[3] Section 101.87 of the Department's regulations states:

> When an appeal is taken from a decision of the Department, the Department shall be deemed to have ruled upon all matters and questions pertaining to the claim. In hearing the appeal the tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case may,

because she "accepted an incentive because her job was being eliminated." C.R. Item No. 5, at 1; Finding of Fact No. 2. It also found she had "no alternatives." *Id.* at Finding of Fact No. 3. The Notice further explained that having no alternatives constitutes a necessitous and compelling reason to leave a job. The UC Service Center then concluded on the basis of these factual findings that Claimant was eligible "under" Section 402(b) of the Law. *Id.*

The words "VLO Proviso" do not appear in the UC Service Center's Notice of Determination. However, Employer's incentive plan was addressed by the UC Service Center in its factual findings, and it was included in the reference to Section 402(b) of the Law. Notably, the evidence developed by Employer at the Referee's hearing pertained to the VLO Proviso. We reject the premise to Employer's due process argument that the Referee raised the VLO Proviso *sua sponte* and, thus, we reject Employer's due process claim.

## II. VLO Proviso

In its second issue, Employer argues that the Board has misconstrued the VLO Proviso in Section 402(b) of the Law. The Board responds that Employer's Voluntary Separation Incentive Program is precisely the type of plan contemplated by the VLO Proviso.

We begin with a review of Section 402(b) of the Law. It makes an employee ineligible for compensation for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. §802(b). An employee who volunteers for a layoff is generally

with the approval of the parties, be heard, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby.

34 Pa. Code §101.87.

6

ineligible for compensation, unless he can show a compelling and necessitous reason for that decision. In 1980, the General Assembly carved out an exception to this general rule and enacted the VLO Proviso.[4] It follows the general language of Section 402(b) and states:

> That no otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position pursuant to a labor-management contract agreement, or pursuant to an established employer plan, program, or policy….

43 P.S. §802(b).

Following the 1980 amendment, this Court interpreted the word "layoff" narrowly to mean only "layoffs with recall rights." *W.R. Grace & Co. v. Unemployment Compensation Board of Review*, 455 A.2d 729, 730 (Pa. Cmwlth. 1983). Thus, the VLO Proviso did not apply to employees who accepted an early retirement or "a permanent separation accompanied by some form of consideration from the employer." *Beddis v. Unemployment Compensation Board of Review*, 6 A.3d 1053 (Pa. Cmwlth. 2010).

This changed with our Supreme Court's ruling in *Diehl v. Unemployment Compensation Board of Review*, 57 A.3d 1209 (Pa. 2012), wherein *Beddis* was explicitly overruled. In *Diehl*, the employer announced a reduction in workforce and identified 20 employees who would be laid off in accordance with the collective bargaining agreement. To reduce the number of involuntary layoffs, the employer offered an early retirement program to employees over 60 years of age, which included health insurance coverage for five years and a payout for unused vacation time. One employee accepted the retirement package, assuming that he

---

[4] Act of July 10, 1980, P.L. 521.

would be eligible for unemployment benefits. When he was denied benefits, the employee appealed to this Court. Relying on decades of precedent that the VLO Proviso does not apply to early retirement packages, this Court affirmed the Board. The employee appealed to our Supreme Court, which granted *allocatur.*

Recognizing that the Law does not define "layoff," the Supreme Court concluded that the term should be construed consistent with "common parlance," which encompasses "both temporary and permanent separations initiated by the employer." *Diehl*, 57 A.3d at 1218 (citing BLACK'S LAW DICTIONARY 614 (abr. 6th ed. 1991)). It then considered whether an early retirement plan offered in the context of a workforce reduction is the equivalent of "an option of accepting a layoff." The Supreme Court concluded that they were the same, reasoning as follows:

> The early retirement package in the case at bar appears to fit within [the VLO Proviso] given that it is clearly a termination of employment that was offered at the will of the [e]mployer.
>
> Here, [e]mployer initiated and announced a workforce reduction in accordance with its contract with the union, naming twenty employees who would be discharged on a date certain, with a sub-list of ten individuals who would be "retained to fill vacancies pending the results of the Early Retirement Offer." Had [e]mployee not accepted the early retirement offer, another less-senior employee would have been laid off and would have been eligible for unemployment compensation. Given that we must interpret eligibility sections broadly in favor of the employee, *we find no language that prevents the interpretation of the term layoff to include this employer-initiated, early retirement packages [sic] offered pursuant to a workforce reduction*.

*Diehl*, 57 A.3d at 1222 (emphasis added).

Employer concedes that *Diehl* has clarified the meaning of "layoff." However, Employer focuses on the phrase in the statute that follows "layoff," *i.e.*,

8

that a layoff must be implemented under "an *established* employer plan, program or policy." 43 P.S. §802(b) (emphasis added). Employer argues that the term "established" was not intended to apply to its Voluntary Separation Incentive Program.

Employer maintains that the enactment of the VLO Proviso was the result of "share the work" programs that were common in the 1960s and 1970s. *See* Daniel R. Schuckers & James K. Bradley, *The Proper Use of the Declaration of Public Policy Section of the Pennsylvania Unemployment Compensation Law*, 87 DICK. L. REV. 507, 510-16 (1983). These programs identified the employees who would separate first in the event of a workforce reduction. Employees who were laid off in accordance with the program were not eligible for unemployment benefits because they had "agreed" to the layoff plan in their collective bargaining agreements. Courts questioned whether these separations were "truly voluntary." *See, e.g., Warner Co. v. Unemployment Compensation Board of Review (Gianfelice)*, 153 A.2d 906 (Pa. 1959). With the enactment of the VLO Proviso, the order of the layoffs established in a collective bargaining agreement did not render the employee ineligible for unemployment benefits. Employer argues that an "established plan," as used in Section 402(b) of the Law, refers only to a plan to which the employee had agreed long before the need for its use, such as in a collective bargaining agreement.

Employer asserts that to be "established" for purposes of the VLO Proviso, the "plan" must target specific employees. The layoff must be from an "available position" that another employee can, and will, fill. Employer concedes that in *Diehl* the Supreme Court did not expressly state that an employee must have

9

agreed to the plan before it is invoked by the employer or that the plan must target specific employees. However, those were the facts in *Diehl*.

Further, post-*Diehl*, this Court has applied the VLO Proviso only where the employer's plan targeted specific employees; thus, they were plans similar to the aforementioned "share the work" programs. *See, e.g., Naval Surface Warfare Center Carderock Division v. Unemployment Compensation Board of Review*, 106 A.3d 256 (Pa. Cmwlth. 2014) (*Naval Surface*) (employer offered various employees a voluntary early retirement plan in order to "reshape" its workforce); *Department of Army Depot v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1715 C.D. 2015, filed July 6, 2015) (employer offered a voluntary separation program to eligible third-shift employees).

The Board responds that Employer is construing the VLO Proviso in a way not supportable by the actual language of Section 402(b) of the Law. Further, the Board maintains that Employer has misconstrued the case law.

The VLO Proviso does not state that an "established" plan must be established in a collective bargaining agreement or agreed to by the employee prior to the need arising for the plan's implementation. The VLO Proviso states, simply, that a claimant is eligible for benefits after "accepting a layoff, from an available position pursuant to a labor-management contract agreement, *or pursuant to an established employer plan, program, or policy*…." 43 P.S. §802(b) (emphasis added). The word "established" merely requires that the employer have instituted a formal plan, program or policy. It neither states nor implies that the plan must be in place prior to the need for the plan arising.

In *Diehl*, employer's plan was not "established" as Employer would define the word. There, the employer issued a memo listing 20 employees scheduled

10

for layoff in accordance with a provision of the collective bargaining agreement and offered an early retirement incentive plan to senior employees. This early retirement plan was not part of the collective bargaining agreement. Rather, the early retirement plan was developed at the time of the workforce reduction to reduce the need for involuntary layoffs. The Supreme Court considered this to be an "established plan" for purposes of the VLO Proviso. Similarly, in *Naval Surface*, the employer offered its employees a voluntary early retirement program when it decided to reshape its workforce. There was no evidence that any employee had previously agreed to accept an early retirement in the event of a workforce reduction.

Employer's argument that a "plan" must target specific employees likewise fails. In *Diehl*, the Supreme Court stated that the employee could claim the benefit of the VLO Proviso even if his position was not targeted for elimination. It explained as follows:

> [T]o the extent the Commonwealth Court has refused to apply the VLO Proviso because employees voluntarily accepted early retirement packages *or because their jobs were not in danger if they did not accept the package*, we reject that analysis which is not supported by the language of the statute requiring an employee's "acceptance" of the layoff option and the existence of "an available position."

*Diehl*, 57 A.3d at 1221 (emphasis added). We followed this logic in *Naval Surface*, explaining that "[t]he fact that [c]laimant's early retirement wasn't forced and that he could have remained in his position brings [c]laimant within the VLO Provision; it does not exclude him." *Naval Surface*, 106 A.3d at 262.

## Conclusion

The plain language of the VLO Proviso does not support Employer's contention that a "plan" must be one that targets specific employees, or positions,

11

and must have been agreed to by the separating employee in advance of its need. Neither *Diehl* nor its progeny support Employer's proffered requirements. Claimant accepted a layoff from an available position pursuant to Employer's Voluntary Separation Incentive Program. As the Board correctly determined, Claimant is eligible for benefits under the VLO Proviso. Accordingly, we affirm the Board's decision.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Regional Port Authority,    :
                    Petitioner       :
                                 :
                v.          :    No. 1106 C.D. 2017
                                 :
Unemployment Compensation Board   :
of Review,                        :
                  Respondent    :

# **O R D E R**

AND NOW, this 20th day of July, 2018, the order of the Unemployment Compensation Board of Review dated July 12, 2017, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge