# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stacy Snyder,                      :
                Petitioner     :
                             :
          v.                  :    No. 737 C.D. 2019
                             :    Submitted: November 22, 2019
Unemployment Compensation     :
Board of Review,               :
             Respondent    :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**            **FILED: June 8, 2020**

Petitioner Stacy Snyder (Claimant), *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed a decision of the Unemployment Compensation Referee (Referee), thereby denying Claimant unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law),[1] relating to voluntary separation without cause of a necessitous and compelling nature. For the reasons set forth below, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

Claimant applied for unemployment compensation benefits on December 12, 2018, after separating from her position as a home health aide at Family Home Medical Support (Employer). (Certified Record (C.R.), Item No. 1 at 1.) The Altoona UC Service Center (Service Center) determined that Claimant was ineligible for unemployment compensation benefits for the waiting week ending December 22, 2018. (C.R., Item No. 4 at 1.) Claimant appealed the Service Center's determination, and a Referee conducted a hearing. (C.R., Item Nos. 5, 8.)

At the outset of the hearing, the Referee informed both parties of their rights to be represented by an attorney or non-legal advisor, to question the other party and witnesses, and to present evidence; both parties indicated that they understood and were aware of their rights. (C.R., Item No. 8 at 2.) In addition, the Referee identified and entered several documents into the record, including the Notice of Hearing. (*Id.*) The Notice of Hearing specifically communicated to Claimant the issues to be considered before the Referee, the instructions on how to participate in the hearing, the purpose of the hearing, and Claimant's rights—*i.e.*, the right to present her own testimony, evidence, and witnesses, to question the opposing parties and opposing witnesses, and to be represented by an attorney or other advocate. (C.R., Item No. 7 at 1-3.) Furthermore, the Notice of Hearing informed Claimant of her responsibility to organize the facts and evidence relating to her appeal before the Referee by gathering any relevant documents and having individuals testify on her behalf at the hearing. (*Id.*)

When Claimant attempted to object to certain text messages being admitted into the record, the Referee informed her that she must have a "legal reason" to object to the messages and any "belief" held by her is characterized as testimony and can be given when she testifies later in the hearing. (C.R., Item No. 8 at 3.) At this

point, the Referee explained to the parties the legal issues present in the case and how the hearing would proceed. (*Id.*) Both parties communicated to the Referee that they understood how the proceedings would unfold. (*Id.* at 4.)

Claimant testified that she last worked for Employer as a Home Health Aide on November 20, 2018, and she resigned on November 30, 2018. (*Id.*) Over the course of her employment, Claimant alleged that she routinely changed her availability to work, Employer scheduled her to work during times when she was unavailable, and Employer made her feel uncomfortable at work. (*Id.* at 4, 7.) Employer scheduled Claimant to work on November 17, 2018, a date and time which Claimant had previously indicated that she was unavailable to work because she did not have childcare during that period of time. (*Id.* at 6-7, 9.) Claimant notified Employer's on-call personnel that she was unable to work, and Employer found someone to cover for Claimant. (*Id.* at 6.) Nevertheless, Claimant went to the client's house anyway. (*Id.* at 6-7.) Claimant testified that the employee covering Claimant's shift and Employer's manager

> made a total fool out of me at the client's house, trying to argue with me; telling me I need to go home. The position was filled. And it wasn't filled. The girl that was there, said that, ["]I'm leaving.["] And, I told my boss[,] ["]I'm leaving at 12["] and all's [sic] they do is [sic] text each other and we're not even supposed to be using a cell phone. A boss should know that. And, she's going in and out of the house, texting, and just made me feel very uncomfortable.

(*Id.* at 6.) After the Referee asked Claimant if she had any additional testimony regarding her separation from employment, Claimant responded: "I didn't feel comfortable enough working there anymore and . . . felt like people were out to get me." (*Id.* at 6-7.) With assistance from the Referee, Claimant entered into the record a letter, written by her mother, that allegedly illustrates that Claimant's boss asked

3

Claimant to have Claimant's mother babysit Claimant's children. Claimant also entered into the record the December availability calendar, which Claimant provided to Employer to show what days and times she was available for work. (*Id.* at 7-8.)

After Employer's representatives elected not to cross-examine Claimant, the Referee asked Claimant several questions to further develop the necessary factual record. Claimant testified that Employer never gave her warnings about her not attending work shifts. (*Id.* at 8-9.) Claimant decided to quit her position after a meeting with Rola Haider, Employer's Support Service Manager, and Rebecca Harman, Employer's Administrative Assistant, because they made Claimant feel uncomfortable. (*Id.*) Claimant quit her position with Employer after saying, "I can't work under two liars, so I might as well just resign." (*Id.* at 4.)

Next, Claimant called Brian Shaffer to testify on her behalf. Claimant attempted to introduce Mr. Shaffer's testimony to illustrate the dates and times that she was unavailable for work. (*Id.* at 10.) The Referee assisted Claimant in this process, indicating that Claimant must ask her witness questions. (*Id.*) Mr. Shaffer indicated that the record before the Referee included false information and that Claimant did not break HIPAA.[2] (*Id.*) Mr. Shaffer does not work for Employer. (*Id.* at 11.)

Ms. Haider testified on behalf of Employer. (*Id.* at 1.) She testified that, over the course of Claimant's employment, Claimant routinely changed or failed to notify Employer of her availability to work. (*Id.* at 12.) Ms. Haider clarified that she only requested that Claimant's mother watch Claimant's children one time, so Claimant could attend the meeting regarding the November 17, 2018 incident. (*Id.*)

---

[2] HIPAA refers to the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29, and 42 U.S.C.).

According to Ms. Haider, Claimant allegedly told other employees that Ms. Haider was "playing games" and trying to "kick [Claimant] out of work," which Ms. Haider maintained was not true. (*Id.*)

Ms. Haider testified that Employer's on-call personnel notified her that Claimant called off work on November 17, 2018, because she was unable to find a babysitter, as her boyfriend, her primary childcare provider, was working. (*Id.* at 11.) Ms. Haider contacted another employee to cover Claimant's shift from 9:00 a.m. until 2:00 p.m. (*Id.*) Claimant insisted on coming to work despite calling off, and she arrived at the client's house at 12:30 p.m. (*Id.*) The employee covering Claimant's shift called Ms. Haider to notify her that Claimant arrived for work and would not leave the client's residence. (*Id.*) Ms. Haider notified Claimant that the other employee was already covering Claimant's shift, and Claimant was to leave the client's residence. (*Id.*) Claimant then argued with Ms. Haider and hung up the phone. (*Id.*) Ms. Haider sent Claimant a text message, stating that Claimant must meet with her on November 20, 2018, regarding the situation on November 17, 2018. (*Id.*) Claimant told Ms. Haider that she would be talking to Employer's Chief Executive Officer (CEO) about this situation. (*Id.*)

Ms. Haider testified that she learned Claimant contacted the client's family, asking it to send a letter to Employer that Claimant had not hung up the phone on Ms. Haider on November 17, 2018. (*Id.* at 12.) The client's family, upset about the situation, did not want to become involved. (*Id.*) According to Ms. Haider, Claimant denied asking the client's family to write such a letter. (*Id.*) Ms. Haider, however, testified that Claimant had a history of contacting other clients' families regarding concerns. (*Id.*)

5

Ms. Haider further testified that Claimant did not attend the November 20, 2018 meeting. (*Id.* at 11.) Ms. Haider arranged another meeting for the upcoming Friday. (*Id.*) Claimant called Ms. Haider on Friday morning, inquiring as to whether she could bring her children with her to the meeting. (*Id.*) Ms. Haider told Claimant that she could not bring her children. (*Id.*) Despite this conversation, Claimant brought her children to the meeting. (*Id.* at 11-12.) Ultimately, Employer's CEO ended the meeting due to Claimant's children's disruptive behavior. (*Id.* at 12.) At that time, Claimant informed Employer's CEO that she was quitting her position. (*Id.*) At no time did Claimant inform Ms. Haider that she felt uncomfortable in her position. (*Id.* at 13.) Ms. Haider testified that had Claimant not resigned her position, continuing work was available for her with Employer. (*Id.*)

Ms. Harman testified that Employer never asked Claimant to resign her position. (*Id.*) During the course of her employment, Claimant would routinely notify Employer about changes in her availability to work. (*Id.*) Employer would change Claimant's hours in accordance with her changed availability. (*Id.*)

At the conclusion of Employer's testimony, the Referee asked Claimant if she had any other questions for Ms. Haider or Ms. Harman and if she had anything additional she would like to add to the record prior to the end of the hearing. (*Id.* at 14.) Claimant communicated that she did not have anything additional to add to the record. (*Id.*)

Following the hearing, the Referee issued a decision, concluding that Claimant was ineligible for unemployment compensation benefits, thereby affirming the Service Center's determination. (C.R., Item No. 9 at 1-3.) Claimant appealed to the Board. The Board affirmed the Referee's decision, concluding that Claimant was ineligible for benefits under Section 402(b) of the Law, because she voluntarily

6

quit her position without a necessitous and compelling reason, and the Referee gave Claimant a full and fair opportunity to present her case. (C.R., Item No. 11 at 1-3.) In so doing, the Board made the following findings of fact:

1. The claimant was last employed as a home health aide by Family Home Medical Support from January 18, 2007, to November 20, 2018, at a final rate of $10.50 per hour.

2. The claimant allegedly had difficulty with the employer's management scheduling her for days she could not work.

3. The claimant also had difficulty with her boss that allegedly led her to feel uncomfortable at work.

4. On November 17, 2018, the claimant called off from work because her boyfriend was working and she did not have adequate transportation.

5. The employer covered the claimant's shift, but the claimant still came to the client's residence.

6. The employer's support service manager told the claimant to leave the client's residence but the claimant refused and hung up the phone on her.

7. The support service manager sent the claimant a text message asking the claimant to meet with her on November 20, 2018.

8. The claimant did not show up for the meeting, and the employer rescheduled it for November 23, 2018.

9. On November 23, 2018, the claimant went to the meeting with her three children.

10. The claimant's children became disruptive and the employer's CEO informed the claimant that the meeting could not take place.

11. The claimant then voluntarily quit her job, telling the employer's CEO, "I can't work under two liars, so I might as well resign."

12. Continuing work was available to the claimant.

(C.R., Item No. 11 at 1-2.) The Board reasoned:

7

In this case, the claimant testified that she had difficulty with the employer scheduling her for days she could not work. The claimant also testified that she had difficulty with her boss that led her to feel uncomfortable at work, and that she notified the employer's CEO about her problems in late October or early November of 2018. On November 23, 2018, however, the claimant voluntarily quit her job, telling the employer's CEO, "I can't work under two liars, so I might as well resign."

The Board does not credit the claimant's testimony that her boss made her feel uncomfortable. Furthermore, because the claimant did not present any testimony on what she told the employer's CEO, the Board does not credit her testimony that she adequately apprised the employer of her grievances. Based on the evidence presented, the Board determines that the claimant had a personality conflict with her boss and that she resigned her employment for reasons that are not necessitous and compelling. Benefits are thus denied.

On appeal, the claimant asserts that the employer subjected her to emotional abuse, and that the Referee stopped her from fully testifying. The Board, however, disagrees, as the claimant did not present sufficient testimony that the employer emotionally abused her at the hearing. Furthermore, the Referee did not behave improperly and gave the claimant a full and fair opportunity to present her case.

The claimant's appeal also presents evidence that is absent from the record before the Referee. The Board may not consider extra-record evidence and avoided doing so here.

(*Id.* at 2-3.) Claimant petitioned the Board for reconsideration of its decision, which the Board denied. (C.R., Item Nos. 12, 13, 14.) Claimant then petitioned this Court for review.[3]

---

[3] In Claimant's petition for review, it appears she seeks to challenge both the merits of the Board's April 19, 2019 order and the Board's letter denying reconsideration of its determination, thereby denying her benefits. As the merits of the Board's order and the Board's denial of

8

On appeal to this Court,[4] Claimant argues: (1) the Board erred in determining that the Referee acted appropriately and afforded Claimant due process; and (2) the Board erred in concluding that Claimant voluntarily quit without cause of a necessitous and compelling nature.[5]

We first consider whether Claimant's due process rights were violated during the hearing before the Referee. It is well-settled that in order to provide due process rights to an unrepresented claimant in an unemployment compensation case, a referee has the responsibility "to assist a pro se claimant at a hearing so that the facts of the case necessary for a decision may be adequately developed." *Beddis v. Unemployment Comp. Bd. of Review*, 6 A.3d 1053, 1059 (Pa. Cmwlth. 2010).[6] The Board's regulations specifically provide: "Where a party is not represented by counsel the tribunal before whom the hearing is being held should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties." 34 Pa. Code

---

reconsideration are two separate appealable orders, it is necessary for a petitioner to file two separate petitions for review in order for this Court to review both orders. *See* 34 Pa. Code §§ 101.111, 101.112. In this case, Claimant filed a single petition for review in which she appears to only challenge the merits of the Board's April 19, 2019 order and not the Board's letter denying reconsideration of its decision. We, therefore, only review the merits of the Board's April 19, 2019 order.

[4] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

[5] Claimant attaches various pieces of extra-record evidence to her briefs before this Court. It is well-settled that this Court cannot consider extra-record evidence that is not part of the certified record on appeal. *See Umedman v. Unemployment Comp. Bd. of Review*, 52 A.3d 558, 564 (Pa. Cmwlth. 2012); *Croft v. Unemployment Comp. Bd. of Review*, 662 A.2d 24, 28 (Pa. Cmwlth. 1995). We, therefore, do not consider this extra-record evidence in our review.

[6] The Supreme Court overruled *Beddis* on other grounds in *Diehl v. Unemployment Compensation Board of Review (ESAB Group, Inc.)*, 57 A.3d 1209 (Pa. 2012).

9

§ 101.21(a). The referee, however, is not required to advise a party on specific evidentiary questions or points of law, but, rather, "must act reasonably in assisting in the development of the *necessary* facts, and any failure to develop an adequate record must be prejudicial to the claimant and not mere harmless error or else a reversal will not be found." *Beddis*, 6 A.3d at 1059 (emphasis in original).

In this case, Claimant essentially argues that her due process rights were violated when the Referee failed to advise her on how to introduce evidence of phone calls, voicemails, emails, and other communications during the hearing. In addition, Claimant essentially argues that the Referee failed to assist her in wording her testimony, failed to review the entire file, and had his back turned to her when she wanted to add additional testimony to the record at the end of the hearing. It is evident, however, that, prior to the hearing before the Referee, the Referee supplied Claimant with the Notice of Hearing that clearly notified Claimant of her right to counsel, her right to present witnesses, and her right to cross-examine witnesses. (C.R., Item No. 7 at 2-3.) In addition, in accordance with Section 101.21 of the Board's regulations, the Referee restated these rights to Claimant at the outset of the hearing. (C.R., Item No. 8 at 2, 4.) At that time, Claimant informed the Referee that she understood her rights. (*Id.*)

Additionally, throughout the hearing, the Referee assisted Claimant with entering documents into the record, informed her how to ask her witness questions, inquired into whether she had any questions for Employer's representatives, and took his own initiative to ask questions of Claimant, Claimant's witness, and Employer representatives to better develop the factual record in this case. (*Id.* at 7-11, 13-14.) The Referee's actions, as shown through the record, indicate that he acted in accordance with his administrative duties during Claimant's hearing and,

therefore, did not violate Claimant's due process rights. The Referee made every effort to further develop the *necessary* factual record. The Referee is not required to assist Claimant on evidentiary issues or in developing her theory of the case. Rather, it is Claimant's responsibility to make decisions regarding evidentiary matters and the development of her case. Claimant simply failed to do so here. The Referee afforded Claimant her full due process rights during the hearing by providing her a full and fair opportunity to present her case.

Next, we consider whether the Board erred in concluding that Claimant voluntarily quit without cause of a necessitous and compelling nature. A claimant who does not have a necessitous and compelling reason to voluntarily quit her position is disqualified for unemployment compensation benefits under Section 402(b) of the Law. Determining whether a claimant had a necessitous and compelling reason to voluntarily quit is a question of law that is reviewable by this Court. *Wasko v. Unemployment Comp. Bd. of Review*, 488 A.2d 388, 389 (Pa. Cmwlth. 1985). In order to establish that one has a necessitous and compelling reason to voluntarily quit, a claimant bears the burden to prove: (1) circumstances existed that produced real and substantial pressure to terminate her employment; (2) like circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve employment. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008) (en banc); *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999). "Mere dissatisfaction with working conditions . . . or a mere personality conflict absent an intolerable work atmosphere, however, does not constitute necessitous and compelling reasons to voluntarily

11

quit." *Gioia v. Unemployment Comp. Bd. of Review*, 661 A.2d 34, 37 (Pa. Cmwlth. 1995) (quoting *Uniontown Newspapers, Inc. v. Unemployment Comp. Bd. of Review*, 558 A.2d 627, 629 (Pa. Cmwlth. 1989)). Additionally, in an unemployment compensation case, the Board is the ultimate finder of fact and is entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985).

Claimant advances two arguments in support of her contention that she had necessitous and compelling reasons to quit. Claimant first argues that Employer's actions—*i.e.*, the incident on November 17, 2018, and her general feeling that people at work were out to get her—constituted a necessitous and compelling reason to quit, because they made her feel uncomfortable. The Board found Claimant's testimony regarding her lack of comfort at work to be the equivalent of a personality conflict with her boss. (C.R., Item No. 11 at 2.) As noted above, a personality conflict in and of itself does not rise to the level of a necessitous and compelling reason to quit. *Gioia*, 661 A.2d at 37. Claimant also argues that the conditions within her clients' homes aggravated her various medical conditions (anxiety, allergies, depression, asthma, and sinus problems), thereby resulting in a necessitous and compelling reason to quit. The certified record, however, does not contain evidence that would support this contention.

Furthermore, even if the circumstances identified by Claimant could form the basis of necessitous and compelling reasons to quit, Claimant failed to establish that she attempted to preserve her employment relationship. A claimant will be denied unemployment benefits where she fails to make a reasonable attempt to preserve her employment by addressing her dissatisfaction with working conditions prior to

12

terminating her employment. *Craighead-Jenkins v. Unemployment Comp. Bd. of Review*, 796 A.2d 1031, 1033 (Pa. Cmwlth. 2002); *Petrick v. Unemployment Comp. Bd. of Review*, 455 A.2d 757, 759 (Pa. Cmwlth. 1983). The Board found that Claimant failed to develop sufficient facts in her testimony to illustrate what grievances, if any, she allegedly voiced to Employer's CEO prior to quitting. (*See* C.R., Item No. 8.)

Accordingly, the order of the Board is affirmed.

P. KEVIN BROBSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Stacy Snyder, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 737 C.D. 2019 |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

**O R D E R**

AND NOW, this 8th day of June, 2020, the order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
P. KEVIN BROBSON, Judge